UNITED STATES of America

v.

Lucius McKOY, Appellant

No. 80–1831.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 29, 1981.

Decided Feb. 23, 1981.

Ed Wilhite, Washington, D. C., (appointed by this Court) for appellant.

Darryl W. Jackson, Asst. U. S. Atty., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry and Paul N. Murphy, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before: MacKINNON, WILKEY and GINSBURG, Circuit Judges.

Opinion for the court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

Lucius McKoy seeks to withdraw his presentence guilty pleas to charges stemming from a bank robbery attempt and ensuing flight. Because we find no abuse of discretion in the District Court's denial of McKoy's motion, we affirm the judgment.

The episode that gave rise to the charges against McKoy occurred on October 18,

1979. As alleged in the indictment filed on January 29, 1980, McKoy and two co-defendants, after attempting to rob a bank, fled by car and killed an elderly woman by striking her with the getaway automobile. McKoy, according to the Government's proffer, drove the car both to and from the scene of the attempted robbery. Specifically, McKoy and his co-defendants were charged with entering a bank with intent to commit a felony (18 U.S.C. § 2113(a)), killing a person while attempting to avoid apprehension for that crime (18 U.S.C. § 2113(e)), attempted robbery (D.C.Code § 22–2902), first-degree felony murder (D.C. Code § 22–2401), and second-degree murder (D.C.Code § 22–2403).

On April 14, 1980, McKoy entered pleas of guilty to the first two charges; pursuant to a plea bargain, the remaining counts were to be dismissed at the time of sentencing. After a hearing complying with the requirements of Fed.R.Crim.P. 11,[1] District Judge Harold H. Greene accepted the guilty pleas and set May 23 as the sentencing date. On May 21 McKoy filed a *pro se* motion to withdraw his guilty pleas. Judge Greene held an evidentiary hearing on July 9 at the conclusion of which he denied the motion. Thereafter, on July 17, Judge Greene sentenced McKoy to imprisonment for twelve to forty-five years on the charge of killing a person while attempting to avoid apprehension. The remaining counts were ordered dismissed.

McKoy now asserts that his April 14, 1980, plea was not voluntary. He alleges that anti-anxiety medication he was using at the time, combined with pressure from a defense counsel who was not adequately prepared for trial, led him to enter the plea against his better judgment. He further maintains that he was not involved in the episode to which the indictment relates. In addition, he wishes to pursue an insanity defense. The Government responds that McKoy's original plea was a reasoned, tactical decision, one that removed from the case the risk of conviction on a felony murder charge. Further, the Government points to an intervening event. After McKoy's April 14 plea, on April 23, his co-defendants were sentenced. Although both had entered guilty pleas, cooperated with the Government, and agreed to testify against McKoy should he stand trial, they received substantial sentences. The Government suggests that McKoy could forecast from those sentences that his own would be heavier than he had anticipated.

Judge Greene was called upon to determine whether permitting McKoy to withdraw his plea would be "fair and just" taking into account the particular facts and circumstances his case presented. *United States v. Barker* 514 F.2d 208, 218–19 (D.C. Cir.) (en banc), *cert. denied*, 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975). Reversal of a trial court's ruling on a plea withdrawal motion is uncommon; absent abuse of discretion, an appellate court will not overturn a decision that the plea should stand. *Id.* at 219. We cannot conclude from the record before us that Judge Greene exceeded the limits of his discretion in determining, after a full airing of the matter, that McKoy made an uncoerced, reasoned choice in pleading guilty, and that the justifications asserted for withdrawing the plea are *post hoc* explanations rooted in fear of a substantial sentence. *See* Tr. 105–08.

McKoy does not assert that the hearing on his plea was conducted unfairly or without due regard for Rule 11 requirements. Nor was the withdrawal motion a swift attempt at retraction. McKoy's motion

---

**1.** Rule 11 sets out a detailed procedure governing the acceptance of guilty pleas and plea bargains. It requires the court to inform the defendant, *inter alia*, of the charges against him, possible penalties, his right to counsel, and his right to a jury trial. The Rule further requires the court to insure that the plea is voluntary and uncoerced. It specifies that a plea bargain must be set forth in the record and is subject to court approval. Prior to entering judgment on a plea, the court is directed to conduct an independent inquiry to satisfy itself that there is a factual basis for the plea.

thus attracts no special solicitude as a prompt application or as a challenge to questionable hearing procedures. *See United States v. Barker, supra,* 514 F.2d at 219–20. On the other hand, McKoy emphasizes that the Government asserts no prejudice to its case should the motion be granted.[2] We therefore focus on two questions: does McKoy now present a plausible defense to the charges against him, *see Everett v. United States,* 336 F.2d 979 (D.C.Cir. 1964); does he supply a tenable explanation for withholding the alleged defense at the time of his original plea hearing. *See United States v. Barker, supra,* 514 F.2d at 221.

We need not dwell on McKoy's bare and belated assertion that he did not participate in the attempted robbery and did not operate the car that killed the elderly woman. Prior to the hearing on the plea withdrawal motion, McKoy never claimed he was not involved in the episode to which the indictment relates. Without a tenable explanation for his about-face, and in view of the Government's proffer to Judge Greene, we think it clear that the ruling below cannot be upset on this ground. If this tactic were successful, a guilty plea would indeed become "reversible at defendant's whim." *Id.*

McKoy's currently-pressed desire to defend on the basis of insanity raises a more substantial question. McKoy had a history of alcoholism and drug abuse. He had been diagnosed in the Veteran's Hospital in 1978 as suffering from schizophrenia and, at the time of the indictment here, he was receiving psychiatric treatment at the D. C. Institute of Mental Hygiene. He had been admitted to St. Elizabeths Hospital several times. Based on this history, his trial counsel, on March 25, 1980, successfully moved for a mental examination. The report of that examination from St. Elizabeths concluded that McKoy was not suffering from a mental disease or defect at the time of the offense. Although it appears that

McKoy wished to be examined by private psychiatrists and so indicated in his *pro se* motion to withdraw his plea, his trial counsel had not pursued the matter. She reasoned that if an insanity defense were advanced, the Government could rebut it effectively by calling the psychiatrists from St. Elizabeths. In sum, the possibility of an insanity defense cannot be discounted as a "last minute fabrication" and Judge Greene did not so treat it.

■ However, the assertion of a legally cognizable defense, standing alone, does not impel a district court to permit withdrawal of a plea. *United States v. Barker, supra,* 514 F.2d at 221. Judge Greene did not purport to decide the merits of the proposed insanity defense. *Cf. Gearhart v. United States,* 272 F.2d 499, 502 (D.C.Cir.1959). Rather, he found no tenable explanation for McKoy's failure to advert in court to the possibility of an insanity defense prior to his guilty plea withdrawal motion. We see no abuse of discretion in that position.

First, Judge Greene rejected the claim that McKoy was disarmed at the plea hearing by the anti-anxiety medication he was taking. The medical testimony indicated that the medication would not render a person incompetent to appear to court. Judge Greene recalled his observation of McKoy's demeanor at the plea hearing and his impression of McKoy's intelligence in the course of discussion at that hearing. Further, Judge Greene noted that McKoy was well oriented at the plea withdrawal hearing, although he was then on the same medication. Particularly in light of Judge Greene's personal observation of McKoy at both hearings, we have no reason to question his unwillingness to accept the anti-anxiety medication as a fair and just basis for nullifying the guilty plea.

Second, Judge Greene refused to accept as an adequate explanation McKoy's claims

---

**2.** At argument, the Government did assert that it would be difficult, at this point in time, to reassemble witnesses to the events charged in the indictment. However, the Government does not claim any protraction attributable to appellant following the May 21, 1980, filing date of his motion to withdraw the April 14, 1980, plea.

of pressure and confusing advice from a defense counsel McKoy now asserts he believed was insufficiently prepared to defend him at trial had he declined to plea. Five attorneys from the Public Defender Service, including the chiefs of the trial and appellate sections, had spoken to McKoy about sentence prospects, and at least three of them advised the guilty plea. At argument, Government counsel acknowledged that defense counsel had given appellant "mistaken advice" concerning parole eligibility within ten years. The multiple, not altogether crisp advice McKoy received, perhaps from too many cooks, may not represent the best practice. But McKoy does not dispute these essential factors: Both from the statements the various lawyers made to him and from what Judge Greene told him in open court, he knew no bargain had been made about the sentence and that the court reserved the right to impose whatever sentence it found mete, up to the maximum.

McKoy knew as well that the Government had overwhelming evidence against him, including the testimony of his two co-defendants, and that an insanity defense would encounter the St. Elizabeths report declaring him without mental disorder. He further knew that the first degree murder conviction to which he was exposed would subject him to a minimum mandatory sentence of twenty years in prison. In addition, Judge Greene noted McKoy's considerable experience with the criminal justice system: "He has . . . been to trial, he has entered pleas of guilty on numerous occasions." Tr. 105. Further, the pre-sentence report showed McKoy possessed above average intellectual ability, a quality Judge

Greene thought borne out by McKoy's conduct before the court. Tr. 105–06.

██ Based on all the relevant facts and circumstances, Judge Greene concluded that McKoy's announced change in position, including his desire to plead insanity, was not plausibly explained. Given the sequence of events and the opportunity Judge Greene had to observe McKoy, we cannot gainsay Judge Greene's suggestion that the co-defendants' sentences were "at the root of all this." Tr. 107. *Cf. United States v. Morgan*, 567 F.2d 479, 500 (D.C.Cir.1977) (separate opinion of Leventhal, J., denying rehearing en banc) (in appraising justification for plea withdrawal, court "can take into account the consideration that the withdrawal motion may have been caused in material degree by the receipt of an adverse report on the defense application for ameliorative conditions of detention").[3]

In sum, we hold that Judge Greene acted within the limits of his authority in denying McKoy's motion and did not abuse his discretion in concluding that McKoy made a voluntary, reasoned choice to plead guilty and now offers no adequate ground for retracting the plea.

*Affirmed.*

---

**3.** Fed.R.Crim.P. 32(d) and applicable precedent draw a sharp distinction between pre-sentence plea withdrawal motions and motions made after imposition of the sentence. The former are to be granted when "fair and just," the latter, only to prevent "manifest injustice." *See generally United States v. Barker, supra*, 514 F.2d at 218–19. The stringent standard for post-sentence plea withdrawal motions is intended to prevent a defendant from testing the weight of potential punishment, and then withdrawing the plea if he finds the sentence unexpectedly severe. *Kadwell v. United States*, 315 F.2d 667 (9th Cir. 1963). As Judge Leventhal suggested in *Morgan*, this concern is properly taken into account in applying the "fair and just" standard to a pre-sentence motion made by a defendant, like McKoy, who has reason to believe his sentence will be more severe than he anticipated at the time of his guilty plea.