UNITED STATES of America, Plaintiff,

v.

Lawrence LITTLEFIELD, Defendant.

No. MCR 81–00205.

United States District Court,
N. D. Florida,
Panama City Division.

July 19, 1982.

David L. McGee, Asst. U. S. Atty., N. D. Fla., Tallahassee, Fla., for plaintiff.

Jose E. Martinez, Coral Gables, Fla., John R. Bartels, Jr., White Plains, N. Y., for defendant.

ORDER DENYING MOTION FOR NEW TRIAL, MOTION TO WITHDRAW GUILTY PLEA, AND MOTION TO REDUCE SENTENCE

HIGBY, District Judge.

The defendant, Lawrence "Larry" Littlefield, has filed motions seeking to relieve

himself of responsibility for his criminal acts. He first filed a "Motion for Reduction of Sentence" (Doc. No. 378), which was followed by a "Motion for Withdrawal of Guilty Plea and for a New Trial and to Abandon Previously Filed Rule 35 [Sentence Reduction] Motion" (Doc. No. 381). The motions rely on the same factual allegations. Those are that two drug enforcement agents would substantiate his claim that he was working as an informant for the DEA when he made his many flights looking for shrimp boats full of marijuana. To properly evaluate Littlefield's claims the twisted course of his guilty plea and the facts of his offense must be examined.

February 26, 1981, Littlefield and a number of others, including Daniel McGuinness, were indicted for conspiracy to possess with intent to distribute over 1,000 pounds of marijuana [21 U.S.C. §§ 846, 841(a)], possession of marijuana with intent to distribute while on board a vessel of the United States [21 U.S.C. § 955a], and attempting to import marijuana [21 U.S.C. §§ 952(b), 963].

Faced with a total criminal liability of 25 years' imprisonment and $155,000 in fines [21 U.S.C. §§ 960(b)(2) and 841(b)(6)] and perhaps influenced by the possibility of going to trial with six of his co-defendants, including a former Utah law student defending himself, Littlefield chose to plead guilty to the single charge of conspiracy to import. Littlefield's plea reduced his exposure to five years' imprisonment and a $15,000 fine. When he pled guilty Littlefield told substantially the same story he has consistently recounted since then. It follows.

### Littlefield's Story

Littlefield claims he got into the drug business at the behest of the Drug Enforcement Administration. He was convicted, upon a plea of guilty, on October 9, 1980, of possession of illegal firearms. In his plea bargain Littlefield agreed to use his piloting skills as an informant for the Drug Enforcement Administration in exchange for a probated sentence. In an effort to satisfy his obligation Littlefield made several flights for Dan McGuinness to look for expected marijuana boats. This happened after earlier attempts to use Littlefield to introduce an undercover agent into another organization failed. The leader of that group put Littlefield in touch with McGuinness. Littlefield reported his contact with McGuinness to his DEA contact, Special Agent Robert Starrett. Littlefield was unsure of McGuinness's last name. Starrett consequently did not recognize it and was insufficiently appreciative of Littlefield's latest adventure. After getting a cool reception from Starrett as well as his supervisor, Special Agent in Charge Bob Ginley, complete with remarks that Littlefield should not call until he had something good, Littlefield quit calling the DEA agents, although he kept scouting for pot boats. Unfortunately for Littlefield and his fellow adventurers, their compatriots and off-loaders were none other than the now famous, then undercover, Grouper agents—Ted Weed, Bill Renton, Jim "Crazy" Harris, Pete Sarron, and Larry Hahn. *See*, Hellman, *Grouper*, Rolling Stone, July 8, 1982, at 17. When Operation Grouper ended McGuinness and Littlefield, as well as many other rudely surprised drug smugglers, were indicted by Grand Juries throughout the country.

When Littlefield entered his guilty plea he told his story of working as a DEA informer. In hopes of lightening his sentence Littlefield again went to work for the DEA. Littlefield's sentencing was postponed several times at his lawyer's and the DEA's request in order to give him an opportunity to demonstrate the extent of his cooperation and the DEA an opportunity to take advantage of it. Sentencing, originally scheduled for July 21, 1981, was finally held January 7, 1982.

While Littlefield awaited sentencing Special Agent John Kreppine, at the request of Littlefield's lawyers, Jose Martinez and John Bartels, contacted me on Littlefield's behalf. He supported Littlefield's many requests for postponement of sentencing. A day or so before Littlefield's sentencing

Special Agent Kreppine came to my office and related all he had been able to learn about Littlefield's dealings with Agents Ginley and Starrett. His information corroborated Littlefield's story in every way. He said the agents had definitely brushed Littlefield off and told him to call again only if he had something really good.

Just before Littlefield's sentencing I met in chambers with one of his lawyers, Jose Martinez, and recounted the information provided by Agent Kreppine. I told him Agent Kreppine's concern that the DEA's actions and inactions be completely known. I also told him the obvious availability to Littlefield of a lack of intent defense concerned me. I informed Martinez I was going to offer Littlefield a chance to withdraw his plea and that I was inclined to sentence Littlefield to four years' imprisonment.

Before sentencing Littlefield I once again explained the offense to him and required him to state the facts which made him guilty. He repeated the story previously set forth. Specifically, he said the agents quit returning his calls and told him not to call unless he had something really good. This is the same story set out in the presentence investigation report which was confirmed by Littlefield in court. This, Littlefield said, he interpreted as meaning actual marijuana or at least a boat. I explained to Littlefield he had a valid defense available and offered him an opportunity to withdraw his guilty plea. After consulting with Martinez, Littlefield reaffirmed his guilty plea, stating he felt that in his heart he was guilty. He also stated he would have accepted payment from his fellow smugglers if their deal had succeeded. I sentenced him to four years' imprisonment and a $10,000 fine. That sentence is one year and $5,000 less than the maximum for the offense. Afterwards, upon Littlefield's motion, his probation revocation hearing on the gun charges was transferred from the Middle District to me. I revoked his probation and sentenced him to two years' imprisonment consecutive to the four-year sentence.

The main difference between Littlefield's previous versions of his crime and the allegations of his latest motions is his claim that

both Agents Ginley and Starrett would testify that Mr. Littlefield never deviated in his role as an informant and, most importantly, followed at all times the instructions given him by both agents and acted in a responsible and honest way. Further, Agent in Charge Ginley would testify he told Mr. Littlefield that it was not necessary that he call in after each and every flight with a person known only as 'Dan' but that he should call the Jacksonville Drug Enforcement Administration ... if and when he saw a boat or illegal drugs.

(Doc. No. 381, Para. 3). He also alleges in his motion for reduction of sentence that he made no money from his smuggling.

### Motion for a New Trial

■ Littlefield's motion for a new trial under Federal Rule of Criminal Procedure 33 relies upon a claim of newly discovered evidence. Littlefield's motion does not explain why a motion for new trial is appropriate. A motion under Rule 33 seems entirely improper because by the very words of the rule a trial must have occurred before a new one may be requested. Nonetheless because allegedly newly discovered evidence is the basis of all Littlefield's motions and newly discovered evidence is one ground for relief under Rule 33, the standards of that rule will be discussed since they offer a helpful tool for evaluating Littlefield's claims. The evidence is the just quoted predicted testimony of Agents Ginley and Starrett.

To urge successfully a motion for new trial based on newly discovered evidence, a defendant must establish four prerequisites: (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the evidence is material and not merely cumulative or impeaching; (3) the evidence would probably produce an acquittal; (4) the failure to learn of the evidence was due to no lack of

diligence on the part of the defendant. *United States v. Adamson*, 592 F.2d 907 (5th Cir. 1979); *United States v. Rachal*, 473 F.2d 1338, 1343 (5th Cir.), *cert. denied*, 412 U.S. 927, 93 S.Ct. 2750, 37 L.Ed.2d 154 (1973).

*United States v. Johnson*, 596 F.2d 147, 148 (5th Cir. 1979). *See, also, United States v. Herman*, 614 F.2d 369 (3d Cir. 1980); *United States v. Maestas*, 523 F.2d 316 (10th Cir. 1975) (both stating the same standard but dividing it into five parts). Holding a hearing lies within a judge's discretion and is certainly not required when the existing record provides all facts needed for a decision. *United States v. Herman*, 614 F.2d 369 (3d Cir. 1980). The record in this case is more than adequate to rule on Littlefield's new trial motion without a hearing.

■ "Newly discovered evidence is evidence that could not have been discovered with due diligence at the time of trial." *United States v. Beasley*, 582 F.2d 337, 339 (5th Cir. 1978). *See, also, Reno v. United States*, 340 F.2d 307 (5th Cir. 1965). To call the testimony of Agents Ginley and Starrett newly discovered is grossly erroneous, if not blatantly misleading. Like the defendants in *Maestas, supra*, and *Beasley, supra*, since Littlefield himself participated in the conversations the agents can testify to, Littlefield was clearly aware of the evidence at the time he chose to plead guilty. Worse, the record, including the sentencing hearing where Littlefield refused my offer to withdraw his guilty plea and his pre-sentence investigative report, shows not only Littlefield but his lawyers knew of the agents and their contacts with Littlefield. "There was no doubt as to their identity, whereabouts or availability. Exactly what they would say on the stand was not known." *United States v. Beasley*, 582 F.2d 337, 339 (5th Cir. 1978). But Littlefield could have subpoenaed them for his sentencing. He chose not to risk relying on what their testimony would be. Significantly, until these motions, Littlefield has not claimed the agents told him not to call unless he saw a boat or drugs. In his sworn testimony Littlefield claimed only that the agents said not to call unless he had some-

thing really good, and he interpreted that to mean a boat or drugs. Apparently his memory of events and willingness to rely upon the testimony of the agents has been affected by his sentence. His change of heart may be understandable now that he is lodged in prison, but that does not make the evidence newly discovered. It is so far from newly discovered that the willingness of attorneys Martinez and Bartels to call it that is incredulous. Littlefield is certainly not entitled to a new trial, and his motion for new trial is denied.

### Motion to Withdraw the Guilty Plea

■ Littlefield's multi-purpose motion also asks to withdraw his guilty plea. While supporting authority is notably lacking from his motion and memorandum, Littlefield appears to be seeking relief under Federal Rule of Criminal Procedure 32(d). That rule allows setting aside a conviction and permitting a defendant to withdraw his plea to "correct manifest injustice." *United States v. Tiler*, 602 F.2d 30 (2d Cir. 1979); *Wyatt v. United States*, 591 F.2d 260 (4th Cir. 1979). The testimony of Agents Ginley and Starrett and the support it would lend to a claim of innocence gives the impression Littlefield claims he is innocent and the conviction of an innocent man is a manifest injustice.

■ A claim of innocence can often reveal a manifest injustice. But a mere claim of innocence does not automatically negate a carefully considered, freely given guilty plea. The reason innocence was not asserted at the time of the plea must be asserted. *United States v. Rasmussen*, 642 F.2d 165 (5th Cir. 1981); *United States v. McKoy*, 645 F.2d 1037 (D.C.Cir.1981). This is true even when a defendant seeks to withdraw his guilty plea before sentencing where the burden is much less than when a defendant seeks to withdraw a plea after sentencing. *Id.*

■ Only one possible explanation for failing to claim innocence can be construed from Littlefield's motion: The evidence of innocence is newly discovered. The utter

**424**

frivolity of that claim has already been discussed.

Other considerations also call for rejecting Littlefield's motion. The lapse of time between a plea and a motion to withdraw is significant. *Watts v. United States*, 278 F.2d 247 (D.C.Cir.1960). A swift retraction may indicate a prompt change of heart or challenge to questionable procedures. *United States v. McKoy*, 645 F.2d 1037 (D.C.Cir.1981). A long delay, on the other hand, most likely indicates dissatisfaction with the consequences of a plea. The latter is the most likely explanation for Littlefield's motion to withdraw. January 7, 1982, Littlefield reaffirmed his guilty plea and was sentenced. February 27, 1982, Littlefield began serving his sentence. He filed his motion to withdraw July 1, 1982. A distaste for the Government's hospitality is the highly likely explanation for Littlefield's attempt to withdraw his plea.

Littlefield has not advanced claims which would amount to a legitimate claim of manifest injustice. The motion to withdraw guilty plea is denied.

### *Motion to Abandon Rule 35 [Sentence Reduction Motion]*

The motion to abandon apparently was filed in order to avoid interfering with the motions for new trial and to withdraw guilty plea. Those motions have been denied. Given Littlefield's actions so far it seems certain the motion for reduction will be renewed soon after this order is filed. It should be addressed now to resolve all issues in this case. The motion to abandon is denied.

### *Motion to Reduce Sentence*

 Finally Littlefield moves under Federal Rule of Criminal Procedure 35 for a sentence reduction. Rule 35 commits sentence reduction to the trial judge's discretion. *United States v. Sturgeon*, 529 F.2d 993 (8th Cir. 1976). Reliance for sentencing upon incorrect information may be a ground for sentence reduction. *United States v. McRoy*, 452 F.Supp. 598 (W.D.Mo. 1978). This seems to be Littlefield's theory. It is belied by the record.

When Littlefield was sentenced I knew through his testimony that his activities had not been profitable. I also knew of his contacts with the Drug Enforcement Administration and his veiled claims of innocence. Those facts were considered then and are not a reason to reduce his sentence. The motion for reduction of sentence is denied.

### *Conclusion*

Littlefield plead guilty knowingly, intelligently, and voluntarily. He made that decision and reaffirmed it when given an opportunity to withdraw his plea, knowing his plea exposed him to five years' imprisonment and a $15,000 fine. Now that he faces the consequences of his crimes and his decisions Littlefield is trying to avoid them. The time has come for Mr. Littlefield to accept responsibility for his actions.