**UNITED STATES of America**

v.

**Christopher E. GRIFFIN.**

**Crim. No. 85–0293.**

United States District Court,
District of Columbia.

Aug. 26, 1986.

See also 641 F.Supp. 1556.

Curtis E. Hall, Asst. U.S. Atty., Washington, D.C., for the Government.

G. Allen Dale, Washington, D.C., for defendant.

## I. INTRODUCTION

CHARLES R. RICHEY, District Judge.

Pursuant to Federal Rule of Criminal Procedure 32(d) and 28 U.S.C. § 2255, defendant moves this Court to set aside his plea of guilty to mail fraud, 18 U.S.C. § 1341, vacate his sentence and grant him a jury trial. Defendant's motion is predicated on allegations that his plea was involuntary because it was induced by a promise that he would not be incarcerated, that the prosecutor's comments during the sentencing hearing breached the plea agreement, that his plea was not made knowingly and voluntarily, and that he was not given adequate time to review the presentence report in order to refute any inaccuracies contained therein. After careful consideration of defendant's motion, the government's opposition thereto and the record, this Court holds that defendant's motion is denied.

## II. BACKGROUND

On January 23, 1986, defendant faced a trial for two counts of mail fraud, 18 U.S.C. § 1341, two counts of wire fraud, 18 U.S.C. § 1343, and three counts of interstate transportation of monies obtained by fraud, 18 U.S.C. § 2314. Defendant pleaded not guilty to each count. Following the impanelling of the jury, but prior to the presentation of any evidence, defendant's attorney requested a recess to negotiate a plea

agreement with the prosecutor. (Plea Transcript 3–4) (hereinafter "P"). Shortly thereafter, defendant's attorney apprised the Court that an agreement had been reached. (P 6). The prosecutor advised the Court that the defendant agreed to plead guilty to one count of his choice on the condition that the government dismiss the remaining counts, not prosecute him for related activities involving victims in New York and Ohio, waive its right to argue that the defendant be incarcerated pending sentencing ("step-back"), waive its right to allocute at sentencing except with respect to full restitution to the victim in the amount of $62,500 and recommend at sentencing that any penalty imposed by the Court not exceed three years. (P 6–8).

After the prosecutor outlined the plea agreement, the defendant was sworn and the Court reviewed the plea agreement with the defendant. (P 10–12). Defense counsel then explained that the prosecutor agreed not to affirmatively argue that defendant be incarcerated, but only to recommend that any sentence not exceed three years. (P 12). The defendant subsequently indicated he understood that despite the prosecutor's recommendation, sentencing was within the sole discretion of the Court. (P 12).

The Court proceded with the Rule 11 inquiry, advising defendant of the rights he was waiving by pleading guilty. (P 15–16). The Court then apprised defendant of the elements of mail fraud, (P 17), which the defendant chose to plead guilty to. (P 9). After the defendant acknowledged that he understood "each and all" of the elements of mail fraud, (P 17–18), the prosecutor proffered the evidence it intended to introduce to prove its case. (P 18–19). The defendant admitted that the evidence was true and that he was pleading guilty because he was in fact guilty. (P 20–24). Finally, defendant was repeatedly told that sentencing was within the sole discretion of the Court. (P 13–14 & 21–22). The Court then accepted defendant's plea of guilty with respect to the mail fraud charge. (P 29).

At the subsequent sentencing hearing the defendant and his counsel stated that they had read the presentence report and made detailed objections to any inaccuracies therein. (Sentencing Transcript 7, 11–15 & 26) (hereinafter "S"). The Court thereupon informed defendant that it would take defendant's version of the alleged inaccuracies as true. (S 11–15 & 51). And, in fact, the Court based its decision regarding defendant's sentence on defendant's version of the facts contained in the presentence report that were allegedly inaccurate. (S 51).

In accordance with the plea agreement, the prosecutor limited its allocution to its request for full restitution amounting to $62,500. (S 28–32). The prosecutor also recommended that any sentence imposed not exceed three years. (S 33). Again, the Court reminded defendant that no promises could be made regarding the severity of his sentence and that sentencing was within the sole discretion of the Court. (S 51–52). The Court then rendered a decision, sentencing defendant to five years imprisonment and ordered that restitution be paid in the amount of $62,500. (S 52).

## III.  THE MOTION TO WITHDRAW

Defendant has no absolute right to withdraw a guilty plea; permission to withdraw rests in the sound discretion of the trial court. *United States v. Davis,* 617 F.2d 677, 685 (D.C.Cir.1979) Rule 32(d) of the Federal Rules of Criminal Procedure provides that a plea may be set aside after sentence is imposed by motion pursuant to 28 U.S.C. § 2255. The burden is on the defendant to establish, *see United States v. Tiler,* 602 F.2d 30, 35 (2d Cir.1979), a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962). The standard is designedly high to "prevent a defendant from testing the weight of potential punishment, and then withdrawing the plea if he finds the sentence unexpectedly severe." *United States v. McKoy,* 645 F.2d 1037, 1040 n. 3 (D.C.Cir.1981). The courts must

strive to preserve the finality of convictions based on guilty pleas.

> "Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas. Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea."

*United States v. Timmreck,* 441 U.S. 780, 784, 99 S.Ct. 2085, 2087–88, 60 L.Ed.2d 634 (1979) (citation and footnote omitted).

**A. *Defendant's Plea Was Knowing and Voluntary; Defendant Was Fully Aware That Sentencing Was Within the Sole Discretion of the Court and That He Could Receive the Maximum Sentence; Moreover, Neither Defense Counsel Nor the Prosecutor Promised Defendant That He Would Receive Less Than the Maximum Sentence***

■ "A voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.... It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired." *Mabry v. Johnson,* 467 U.S. 504, 508, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984) (citations omitted). A plea of guilty is consensual if entered by a defendant who is fully aware of the direct consequences of his plea, "including the actual value of any commitments made to him by the court, prosecutor, or his own counsel." *Id.* at 509, 104 S.Ct. at 2547 (quoting *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970) (citations omitted)). Thus, as the Court held in *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), it follows "that when the prosecutor breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise,

and hence his conviction cannot stand...." *Mabry v. Johnson,* 467 U.S. at 509, 104 S.Ct. at 2547 (explaining *Santobello,* 404 U.S. at 261–62, 92 S.Ct. at 498–99). In short, if the defendant's plea rests in any significant degree on a false promise, so that the false promise can be said to be part of the consideration of the plea agreement, defendant's plea loses its consensual character if such promise is not fulfilled. *See Santobello,* 404 U.S. at 262, 92 S.Ct. at 499.

■ Defendant first contends that his guilty plea was involuntary because he was induced to plead on the basis of a false promise. Specifically, defendant alleges that his decision to plead guilty was conditioned on an agreement between himself, defense counsel, the prosecutor and "purportedly" the Court that he would not be incarcerated. Defendant argues that his five year imprisonment sentence constituted a breach of the plea agreement and it thereby loses its consensual character.

■ If defendant was promised that he would not be sentenced to five years, he is entitled to relief. *Santobello v. New York,* 404 U.S. at 262, 92 S.Ct. at 498. In determining whether such a promise was made, the Court cannot simply disregard or take lightly any statements made by the defendant while under oath. "For the representations of the defendant, his lawyer, and the prosecutor at [the original plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. *Solemn declarations in open court carry a strong presumption of verity.*" *Blackledge v. Allison,* 431 U.S. 63, 73–74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (emphasis added). A defendant's conclusory allegations will not overcome assertions of voluntariness made at a plea hearing. *United States v. Brown,* 715 F.2d 387, 388 (8th Cir.1983). The defendant must produce convincing evidence that his plea was involuntary. Generally, a plea will not be set aside as involuntary where the defendant is invariably informed that the sentencing decision is solely within the

discretion of the court and the defendant states at the plea hearing that no promises other than the plea agreement were made. *See Hollis v. United States*, 687 F.2d 257, 260 (8th Cir.1982), *cert. denied*, 459 U.S. 1221, 103 S.Ct. 1228, 75 L.Ed.2d 462 (1983).

Whether defendant was promised that he would not be incarcerated is a question of fact. During a hearing on May 22, 1986, the Court heard testimony from three witnesses regarding the circumstances surrounding the plea agreement. The defendant testified that he was promised probation if he agreed to make full restitution. (May 22 & 23, 1986 Transcript 137–63) (hereinafter "T"); Motion to Withdraw Plea, Exhibit 1. Defendant's attorney, Mr. Halleck, on the other hand, stated: "I didn't promise him that he would get probation, but I did promise him that he wouldn't get more than three years," (T 193), and "I have indicated to [the defendant] I can't make any promises about what the Court will do." (Plea Transcript 21) (hereinafter "P"). The prosecutor, Mr. Jackson, testified that he made no promises regarding incarceration except that he would recommend that the Court not give a penalty exceeding three years. (T 165–66); *See also* Affidavit of Darryl Jackson, Assistant United States Attorney, in Record.

As the fact finder and having observed the testimony first hand, the Court finds Mr. Jackson wholly credible. The Court spent many hours wrestling with the inconsistencies between the testimony of the defendant and his attorney, Mr. Halleck. There was not a common understanding between the defendant, Mr. Halleck and Mr. Jackson that the defendant would not be incarcerated. The only credible evidence of a plea agreement was the evidence of the agreement as stated in open court on January 23, 1986, within minutes after the agreement was reached. Both the defendant and Mr. Halleck stated that Mr. Jackson had agreed to "recommend" a maximum sentence of three years. (P 13–14, 21). Furthermore, it was made clear to defendant and Mr. Halleck, an experienced attorney and former judge, and they fully knew, that sentencing was within the sole discretion of the Court. (P 21). At no time did the Court promise defendant, Mr. Halleck or Mr. Jackson that it would not impose the maximum sentence. Mr. Halleck stated this to the Court. (P 21). One example of the colloquy before the Court follows.

THE COURT: Has your plea of this afternoon been tendered or offered to the Court by virtue of any representation by Mr. Halleck, or anyone else, including the prosecutor, as to what the actual sentence will be imposed by the Court?

DEFENDANT: No.

MR. HALLECK: I have indicated what I think, but I have indicated to him I can't make any promises about what the Court will do.

THE COURT: That is exactly right. You understand that, do you not?

DEFENDANT: Yes.

THE COURT: Do you understand the Court has total discretion and it could sentence you to a maximum term of imprisonment of up to five years in jail and fine you $1,000 or both?

DEFENDANT: Yes, sir.

(P 21). Neither defendant nor Mr. Halleck protested at the sentencing or the subsequent show cause hearing that the Court's decision to sentence defendant to five years breached any promise made by Mr. Jackson. Indeed, the defendant admitted at the sentencing proceeding that his guilty plea was entered with his full understanding that the Court was under no obligation to accept the recommendation of his counsel or the prosecutor and that the length of the sentence would be determined solely by the Court. (S 51–52).

The Court finds, as a matter of fact, that defendant was not promised by Mr. Jackson, Mr. Halleck or the Court that he would receive less than the maximum sentence of five years. At most, defendant had an expectation that he would receive a shorter sentence than he did. That he expected a lower sentence, however, is not sufficient grounds for withdrawing a plea after sentencing, *United States v. White*, 572 F.2d 1007, 1009–10 (4th Cir.1978) (section 2255);

*Greathouse v. United States,* 548 F.2d 225, 228 n. 6 (8th Cir.), *cert. denied,* 434 U.S. 838, 98 S.Ct. 130, 54 L.Ed.2d 100 (1977); *Masciola v. United States,* 469 F.2d 1057, 1058–59 (3rd Cir.1972) (Rule 32), particularly where the defendant was informed that the sentencing decision is solely within the Court's discretion. *Hollis v. United States,* 687 F.2d at 260; *United States v. Henderson,* 565 F.2d 1119, 1120–21 (9th Cir.1977), *cert. denied,* 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978). The Court holds that defendant's decision to plead guilty was voluntary because he did not rely in any significant degree on a promise that he would not be incarcerated. Therefore, the presence of a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure has not been established by the defendant.

B. *The Prosecutor's Comments Were Directly Relevant to Restitution and, Therefore, Did Not Constitute a Breach of the Plea Agreement*

█ There is no dispute that the government has a duty to fulfill its part of a plea agreement. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York,* 404 U.S. at 262, 92 S.Ct. at 499. The test to be applied by the Court is an objective one—whether the plea agreement was breached—irrespective of the prosecutor's motivations or justifications for the breach. *United States v. Grandinetti,* 564 F.2d 723, 727 (5th Cir. 1977); *United States v. Brown,* 500 F.2d 375, 378 (4th Cir.1974).

█ The defendant asserts that Mr. Jackson breached the plea agreement by commenting on defendant's character and the circumstances relating to the money allegedly obtained by him. Whether the plea agreement was breached depends on the terms of the agreement. The record shows that the defendant agreed to plead guilty to count two, charging him with mail fraud. In exchange, the government promised to waive "step-back," not to prosecute

for similar crimes against victims in New York and Ohio, to recommend that any sentence not exceed three years and to waive allocution except with respect to full restitution in the amount of $62,500. (P 7–18).

The Court finds that the plea agreement clearly preserves Mr. Jackson's right to allocute with regard to full restitution in the amount of $62,500. (P 7–18). An examination of Mr. Jackson's comments shows that his allocution was limited to facts relevant to the appropriateness of restitution and the defendant's ability to make full restitution.

Mr. Jackson preceded his remarks by stating that he would limit his comments to the government's concern with restitution. (S 28). He continued by outlining how much money defendant received, the source of that money and why the victim gave him the money. (S 28). The Court, having not yet decided whether full restitution was appropriate, found Mr. Jackson's comment relevant to his request for restitution. It was necessary that the Court understand that $62,500 was given to the defendant in determining the amount of restitution to be ordered. Also, why the victim gave the defendant so much money was important. That the victim had financially overextended herself because she was led to believe that defendant's life was in jeopardy was relevant to persuading the Court that restitution was appropriate.

In addition to arguing that restitution was appropriate in this case, Mr. Jackson also spoke in some detail about defendant's assets in order to establish that defendant possessed the means to make full restitution. (S 29). Mr. Jackson informed the Court that the defendant completed an application to open a Swiss bank account, (S 29), implying that defendant had a substantial amount of money with which to open such an account. He then explained that there is some question about the whereabouts of approximately $30,000, raising the possibility that defendant may have stashed it away somewhere. (S 29–31). Finally, Mr. Jackson mentioned an incident in

which the defendant allegedly admitted to owning three fur coats. (S 31). The Court holds that these comments were relevant to Mr. Jackson's request for full restitution because, as Mr. Jackson said, they "indicate that the defendant does have the wherewithall to make substantial restitution to the complainant and to make it without further delay in some substantial form." (S 31).

Next, Mr. Jackson read a short statement from an Illinois appellate decision referring to defendant. (S 31–32). That statement suggested that the Court, in deciding whether to order full restitution, should carefully consider the conflicting statements made by the defendant and Mr. Jackson regarding defendant's assets. (S 32). As Mr. Jackson stated: "Your Honor, we simply ask, in terms of ordering restitution, the Court not be further manipulated to the extent that such manipulation may take place and that the Court order full restitution from the defendant to the complainant in the full amount of $62,500." (S 32–33). All of his remarks were directly relevant to the Court's decision whether to order full restitution.

Additionally, that neither defendant nor his attorney moved to rescind the plea agreement or object to Mr. Jackson's comments implies that the parties understood that Mr. Jackson's promise to limit allocution to full restitution did not preclude him from establishing for the record that full restitution was appropriate and that defendant had the means to make full restitution. Arguably, defendant waived his right to contest Mr. Jackson's offer of evidence regarding restitution by failing to object to the comments or rescind the plea agreement at sentencing. *United States v. Burns*, 684 F.2d 1066, 1078 (2d Cir.1982), *cert. denied*, 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983). Defendant should not be permitted to contest the validity of the plea agreement after sentencing when the grounds and opportunity to challenge the evidence were fully present before sentencing. To do so would allow defendant to test the weight of potential punishment and then seek to withdraw the plea because

the punishment is unexpectedly severe. *McKoy*, 645 F.2d at 1040 n. 3.

Then, Mr. Jackson, as agreed in the plea bargain, recommended that the Court not sentence the defendant to more than three years. (S 33). This was sufficient as the government was under no implied-in-law requirement to explain its reasons or make its recommendations enthusiastically. *United States v. Benchimol*, 471 U.S. 453, 105 S.Ct. 2103, 2105, 85 L.Ed.2d 462 (1985) (per curiam). Moreover, Mr. Halleck stated for the record that the agreement that the prosecutor recommend that any sentence not exceed three years was intended to limit the prosecutor's comments to a mere recommendation and prohibited the prosecutor from affirmatively arguing that defendant be incarcerated. (P 12). The prosecutor, accordingly, was careful not to go beyond making a mere recommendation.

All of these comments by Assistant United States Attorney Jackson were objective within the confines of the agreement to request restitution in the full amount of $62,500 and related only to the credibility of defendant's representations regarding his ability to make restitution. Lastly, as indicated herein, Mr. Jackson said that we would ask that defendant not be incarcerated for any period exceeding three years. In other words, the defendant and his lawyer put the issue of defendant's credibility in issue respecting restitution and the information presented to the Court obviously went only to that issue because at the end of all his remarks Mr. Jackson said that we would ask the Court to order full restitution and not incarceration above three years. See Appendix A, attached hereto, for the material transcript excerpts. Therefore, the Court holds that Mr. Jackson's comments did not breach the plea agreement by an objective standard, *Grandinetti*, 564 F.2d at 727; *Brown*, 500 F.2d at 378, nor has the defendant established the occurrence of a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.

Finally, the comments by the victim, Ms. Joan Pierotti, also did not breach the plea agreement. Ms. Pierotti was not a witness for the government, (S 38), but spoke for herself and on her own initiative in response to Mr. Halleck's comments regarding her character. (S 6, 18, 20–21 & 37). Mr. Jackson simply notified the Court that Ms. Pierotti was present and wished to respond to Mr. Halleck's remarks. (S 38). Mr. Jackson made it clear that Ms. Pierotti was not addressing the Court on the government's behalf. (S 38). The Court finds that Ms. Pierotti's remarks may not be attributed to the government and, consequently, do not breach the plea agreement.

C. *Defendant's Plea to Mail Fraud Was Knowingly and Voluntarily Made*

■ To knowingly and intelligently plea guilty, a defendant must know the direct consequences of his plea. *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970). Consequences are direct when they have a definite and immediate effect on the range of the defendant's punishment. *Cuthrell v. Director*, 475 F.2d 1364, 1365–66 (4th Cir.), *cert. denied*, 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973). Declarations under oath and on the record by a defendant that he is aware of the elements of mail fraud and the maximum sentence that he could receive carry a strong presumption of verity. *Blackledge*, 431 U.S. at 73–74, 97 S.Ct. at 1628–29.

Defendant was fully aware that he was pleading guilty to mail fraud. In fact, it was defendant and his attorney who chose mail fraud. (P 9–10). Defendant stated that his guilty plea was made on the advice of counsel and that he was satisfied with Mr. Halleck's services. (P 26). Also, defendant represented to the Court that he understood each of the elements of the charge, (P 17), was apprised of the government's evidence against him and admitted that the proffered evidence was true with one unimportant exception. (P 18–21). Thus, the record shows that the direct consequences of defendant's plea were made fully known to defendant and the Court made the proper inquiries before accepting the plea. *Jones v. United States*, 437 F.2d

93, 94 (4th Cir.1971) (defendant's denial that his guilty plea was knowingly and voluntarily made was insufficient to establish manifest injustice where the record indicated that the trial court made proper inquiries before accepting the plea). Therefore, the Court finds that defendant's plea was knowingly and intelligently made.

Defendant also contends that his plea was not voluntary. The Court, however, finds that defendant has not established that his plea was the result of force, or threats, or of promises apart from the plea agreement. *Brady v. United States*, 397 U.S. at 755, 90 S.Ct. at 1472. Therefore, based on the evidence set forth in the above paragraph, the Court holds that defendant's plea was voluntary. *United States v. Lagrone*, 727 F.2d 1037, 1039 (11th Cir.1984) (per curiam) (plea voluntary when defendant apprised of rights and sentencing possibilities); *United States v. Cusenza*, 749 F.2d 473, 475–77 (7th Cir.1984) (plea valid when defendant understood nature of charges despite district court's failure to read indictment or refer to charges in a meaningful way); *United States v. Goodheim*, 686 F.2d 776, 777–78 (9th Cir. 1982) (trial court did not err in finding guilty plea knowing and voluntary when trial judge probed defendant's understanding of meaning and consequence of guilty plea). Because defendant's plea was knowingly and voluntarily made, the Court finds that defendant has not established a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.

D. *Defendant Had Adequate Time to Review the Presentence Report and Addressed, in Detail, the Inaccuracies in the Report, Which the Court Chose Not to Consider in Imposing Defendant's Sentence*

■ Defendant contends that he nor his attorney had adequate time to review the presentence report and correct its inaccuracies. To the contrary, the evidence indicates that defendant had ample time to review the report. Not only was defendant

given an opportunity to read the report during the Court's long recess before the sentencing proceeding while it was awaiting the arrival of Mr. Halleck, but the defendant and Mr. Halleck acknowledged that they had "received, read and fully discussed with each other the Presentence Investigation Report ... and fully understand all that is contained therein." *See* Exhibit 2 Attached to Motion to Withdraw Plea (filed Apr. 15, 1986). Furthermore, defendant specifically stated that he had adequate time to read the Presentence Report and discuss it with his counsel, raised detailed objections to certain inaccuracies contained in the report and testified that all the other facts set forth in the report were correct. (S 15–26).

The Court finds that the evidence amply demonstrates that defendant had adequate time to read the presentence report and address the alleged inaccuracies therein. Having done so, pursuant to Federal Rule of Criminal Procedure 32(c)(3)(D), the Court did not take into account any of the matters controverted by defendant in sentencing him. In fact, the Court went beyond the requirements of Rule 32(c)(3)(D) by accepting as true, for the purposes of sentencing, the facts disputed in the report as articulated by the defendant and Mr. Halleck. (S 15–26 & 51). Therefore, the Court finds that defendant has not established a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure as required by Rule 32 of the Federal Rules of Criminal Procedure.

## IV. CONCLUSION

For the reasons set forth above, the Court hereby denies defendant's motion to withdraw his guilty plea, to vacate his sentence and for a jury trial.

## APPENDIX A

MR. JACKSON: Your Honor, there have been characterizations of Ms. Pierotti's position by Mr. Halleck. Ms. Pierotti is in the Courtroom today and I believe that, under the law, certainly under equitable principles, she should be allowed the opportunity, should the Court wish to hear from her first-hand what her position was with regard to this matter.

I won't seek to characterize what her position is in terms of whether all she is seeking back from Mr. Griffin in this particular case is her money or not.

THE COURT: You would not seek to characterize?

MR. JACKSON: I would not characterize her position for her. She is here and she can speak for herself.

THE COURT: She is the victim and, as I understand the law, she is entitled to speak.

MR. JACKSON: That's right.

I will go on to say that this case of the United States v. Christopher Griffin is not Joan Pierotti v. Christopher Griffin.

There is a larger scheme to be addressed here in terms of the criminal conduct which has occurred.

The government will limit its allocution, pursuant to the plea agreement between it and the defendant, to its concern with the actual restitution in the amount of $62,500.

The money was given to the defendant, approximately $50,000, to post bond, approximately $12,500 to appeal a conviction and for legal fees.

The source of the money, as the Court well knows, is $14,000 loaned by Mrs. Dorothy Hughes, who is a friend of Ms. Pierotti.

And now Ms. Pierotti owes that money back to Ms. Hughes at the rate of 8 percent interest.

A source of $36,000 of the money was a second mortgage on Ms. Pierotti's home. She owes a total of $53,000 now for borrowing that $36,000, because the interest rate on that is 15.34 percent.

She used $11,000 of money given by her parents in order to enable her to buy a new car.

We point all of this out, your Honor, because it demonstrates that the com-

plainant is not a person of means. She is a school teacher, as the Court knows.

She extended herself, as the facts show. She extended her property, because she thought the defendant's life was in jeopardy, if he was transferred from the Federal Correctional Institution at Petersburg back to Joliet Prison in Illinois.

That is the nub of this case, as the government sees it. And that is why the money was forwarded, according to Ms. Pierotti, to Mr. Griffin, because he told her if he was transferred in that fashion his life would be in jeopardy, and she forwarded these sums of money to him to attempt to allow him to obtain his release from incarceration by posting a bond while he continued his appellate process in an attempt to reverse what he characterized as an unjust conviction.

We would request, your Honor, that the Court order as a part of any sentencing, that it may impose, restitution in full to the complainant and we believe that the defendant has the means to do it.

I have, among the bank records which we gathered during this investigation, an application, which I am now showing to Mr. Halleck, for a Swiss bank account, which the defendant filled out in October of 1984, a bank account in Switzerland, that funds were to be forwarded to that account from the Commercial Bank and the City Bank of North America verified defendant's signature.

The defendant has acknowledged that he sent some $30,000 to his brother, Mr. Marcus Griffin. He represents to the Court that his brother bought a car with the funds, against the defendant's instructions.

I am able to tell the Court that Mr. Marcus Griffin testified before the Grand Jury in this particular case and that is not what Mr. Marcus Griffin says he did with the money.

Interestingly enough, what the defendant's brother says he did with the money, as the presentence report reflects, is that the defendant told him to give it to an unidentified woman in cash on a street corner and that, in fact, that is what he did at his brother's instructions.

He had never seen the woman before, wouldn't recognize her again, has never seen her since. A very interesting story and one that we feel, if we had to go to trial, would have damaged the defendant's position in this particular case.

But the money has been put in a place, once he turned it over to his brother, where, unlike in a financial institution, it becomes untraceable.

So anyone can forward any story that they want to about what the money was used for, but there are no bank records, because it is not an institution to allow us to refute one way or the other where the money is.

But one thing is not in dispute and that is it did go in his brother's hands, whether it was in a safe, as his brother indicated he has in his particular home, whether it is somewhere else, the trail has gone cold on that particular money.

The Swiss bank account, coupled with the $36,000 to his brother, coupled with the three fur coats incident as related to the Court by the complainant's letter that Mr. Griffin showed up in an expensive hair salon in Georgetown, pending sentencing, and represented that he has three fur coats, three fur coats and that he hopes it gets colder here in Washington so he can wear them, and being confronted by the complainant's daughter who indicated that perhaps it might be best if he would dispose of those three coats or jackets to make restitution, we feel—the government feels all indicates that the defendant does have the wherewithal to make substantial restitution to the complainant and to make it without further delay in some substantial form.

And we request that full restitution in the form of $62,500 be ordered by the Court.

In a prior conviction of the defendant's, which is reported, People of the State of Illinois v. Christopher Griffin, found at 446 Northeastern Reporter 2d 1175, an Illinois appellate decision which involves the defendant obtaining a number of luxury items, watches and luggage and so forth, as reported in the presentence reports and having been charged with theft and conspiracy to commit theft, as a result of that, the sentencing court in that particular case, had these remarks to make about the defendant, and I quote:

"Defendant is certainly a young man, but in a short period of life, adulthood, he has been able to circumvent the law. He has used people, he has taken advantage of people, he has used cunningly his abilities, and they are great abilities. I have seen a lot of people up here before me, but I would indicate that Mr. Griffin is an intelligent individual who is actually aware of what he is doing. This is not a situation of an 18–year old boy, just out of the farm, who is not aware of what he is doing, that he's only doing this because of the lark or because of some great need or desire or because of funds or what have you. This man is a cunning man. He has used his wits, he has used his charm, and he has abused the general public by using these matters. Certainly this is not a crime of passion, this is not a violent crime, but his conduct is such that as far as this Court is concerned he can very well be construed as coming within the realm of taking advantage of people and using people for his own benefit and for his own needs and desires, whatever they may be."

Your Honor, we simply ask, in terms of ordering restitution, the Court not be further manipulated to the extent that such manipulation may take place and that the Court order full restitution from the defendant to the complainant in the full amount of $62,500.

As part of our plea agreement, the government would recommend that any penalty imposed not exceed three years and we will dismiss all other counts after sentence is imposed by the Court.