**UNITED STATES of America**

v.

**Christopher E. GRIFFIN, a/k/a Chris E. Griffin, Chris Griffin, Appellant.**

**No. 86–3058.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 6, 1987.

Decided April 14, 1987.

G. Allen Dale, Washington, D.C., for appellant.

Susan A. Nellor, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Mary Ellen Abrecht and Darryl W. Jackson, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before WALD, Chief Judge, EDWARDS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

Appellant Christopher E. Griffin pled guilty to one count of mail fraud, was sentenced to five years' imprisonment, and was ordered to pay restitution to the victim in the amount of $62,500. He subsequently moved the District Court to set aside his guilty plea, vacate his sentence, and grant him a jury trial. Griffin alleged that his plea was involuntary because it was induced by promises by his attorney and the prosecutor that he would not be incarcerated, that the prosecutor's comments during the sentencing hearing breached the plea agreement, that his plea was not made knowingly and voluntarily because he was not fully informed by his attorney regarding the count of the indictment to which he was to enter his plea, and that he was not given adequate time before sentencing in which to review the presentence report. The District Court rejected all of these claims and denied the motion. 641 F.Supp. 1546, 1547 (D.D.C.1986). For the reasons set forth below, we affirm.

## I. BACKGROUND

A seven-count indictment filed on August 8, 1985 charged Griffin with two counts of mail fraud (18 U.S.C. § 1341), two counts of wire fraud (18 U.S.C. § 1343), and three counts of interstate transportation of money obtained by fraud (18 U.S.C. § 2314). Griffin's trial was scheduled to begin on January 23, 1986. After a jury had been selected and sworn, but before any evidence had been presented, Griffin's counsel, Mr. Charles Halleck, informed the court that a plea agreement had been reached. Transcript of Plea Proceeding ("PT") at 6. The agreement provided that Griffin would plead guilty to one count of his choice in exchange for the government's promise to dismiss the remaining counts, to forego prosecution of Griffin for related offenses involving victims in Ohio and New York, to waive its right to argue that Griffin be incarcerated pending sentencing, to waive its right to allocute at sentencing except to request that the court order restitution in the amount of $62,500, and to recommend that any penalty imposed by the court not exceed three years. In addition, Griffin agreed to execute a promissory note for the balance of the $62,500 not paid at the time of sentencing. PT at 6–8. Griffin's counsel first stated to the court that Griffin intended to plead to count five of the indictment, which charged interstate transportation of money obtained by fraud. PT at 6. After the prosecutor responded to the court's inquiry concerning the maximum penalty for count five, Grif-

fin's counsel indicated that he had erred and that Griffin actually intended to plead guilty to count two of the indictment, mail fraud, which carried a maximum penalty of five years' imprisonment, a $1,000 fine, or both. PT at 8–9.

Griffin was then sworn, and the court proceeded to question him as to his understanding of the plea, as required by Rule 11 of the Federal Rules of Criminal Procedure. Griffin stated that he wished to plead guilty to count two of the indictment and that he understood the terms of the plea agreement. PT at 10–12. Griffin acknowledged that the court could impose the maximum sentence of five years, $1,000, or both, and could also order him to make restitution. PT at 13–14. The following exchange then took place:

> The Court: Has your plea of guilty this afternoon been tendered or offered to the court by virtue of any representation by Mr. Halleck, or anyone else, including the prosecutor, as to what the actual sentence will be imposed by the court?
> The Defendant: No.
> Mr. Halleck: I have indicated what I think, but I have indicated to him I can't make any promises about what the court will do.
> The Court: That is exactly right. You understand that, do you not?
> The Defendant: Yes.
> The Court: Do you understand the court has total discretion and it could sentence you to a maximum term of imprisonment of up to five years in jail and fine you $1,000, or both?
> The Defendant: Yes, sir.

PT at 21. Finally, Griffin stated that he understood that if the court accepted his guilty plea, he would not be allowed to withdraw the plea. PT at 28. The court then accepted Griffin's guilty plea to one count of mail fraud. PT at 29.

At the sentencing hearing, which was held on February 27, 1986, Griffin and his counsel requested the court to impose probation or a suspended sentence. Transcript of Sentencing Hearing ("ST") at 15–27. The prosecutor then addressed the court, stating that "[t]he government will limit its allocution, pursuant to the plea agreement between it and the defendant, to its concern with the actual restitution in the amount of $62,500." ST at 28. The prosecutor indicated that the victim, Ms. Joan Pierotti, had given Griffin $62,500, which she obtained by borrowing money from a friend and by taking out a second mortgage on her house. Ms. Pierotti believed that Griffin's life would be endangered if he were unable to obtain his release from prison, and the money she gave Griffin was ostensibly to be used by him to post bond and to pay legal fees. ST at 28–29. The prosecutor argued that Griffin had sufficient assets to enable him to make full restitution, noting that Griffin had filled out an application for a Swiss bank account in October of 1984, had sent $30,000 to his brother, and had once boasted about owning three fur coats. ST at 29–31. Finally, the prosecutor quoted from a decision of an Illinois court, which stated, in sentencing Griffin for a prior conviction:

> Defendant is certainly a young man, but in a short period of life, adulthood, he has been able to circumvent the law. He has used people, he has taken advantage of people, he has used cunningly his abilities, and they are great abilities.... This man is a cunning man. He has used his wits, he has used his charm, and he has abused the general public by using these matters. Certainly this is not a crime of passion, this is not a violent crime, but his conduct is such that as far as this court is concerned he can very well be construed as coming within the realm of taking advantage of people and using people for his own benefit and for his own needs and desires, whatever they may be.

ST at 32 (quoting *People v. Griffin*, 113 Ill.App.3d 184, 68 Ill.Dec. 778, 446 N.E.2d 1175 (1982)). After reading this excerpt, the prosecutor stated, "Your honor, we simply ask, in terms of ordering restitution, the court not be further manipulated to the extent that such manipulation may take place and that the court order full restitution from the defendant to the complainant in the full amount of $62,500." ST at

32–33. The prosecutor concluded his allocution by stating that "[a]s a part of our plea agreement, the government would recommend that any penalty imposed not exceed three years and we will dismiss all other counts after the sentence is imposed by the court." ST at 33. The prosecutor then indicated that Ms. Pierotti "would like to address some brief remarks to the court." ST at 38. Ms. Pierotti was sworn, questioned by the court, and cross-examined by Griffin's counsel. ST at 38–46. At the conclusion of the hearing, the court sentenced Griffin to five years' imprisonment and ordered him to pay restitution in the amount of $62,500. ST at 52.

Halleck stated at the sentencing hearing that Griffin had given him $5,400 to be paid immediately as partial restitution. ST at 23, 48. When Halleck did not tender the $5,400 after the hearing, the government sought to have Griffin held in contempt of court. On March 5, 1986, the court ordered Griffin to show cause why he should not be held in civil contempt of court. At the show cause hearing on March 10, Halleck stated that he was refusing to relinquish the $5,400 because it had been given to Griffin by his fiancee, who now wanted the money returned to her. Transcript of Show Cause Hearing ("SCT") at 2–8. At the conclusion of the hearing, the court took the matter under advisement. SCT at 28–29.

On April 15, 1986, Griffin moved the District Court to allow him to withdraw his guilty plea. A hearing on this motion, along with a further hearing on the order to show cause why Griffin should not be held in contempt, was held on May 22–23, 1986. Griffin, Halleck, and the prosecutor each testified concerning the circumstances surrounding the negotiation of the plea agreement. Griffin testified that he was promised, both by Halleck and by the prosecutor, that he would be placed on probation or given a suspended sentence if he agreed to make full restitution to Ms. Pierotti. Transcript of Hearing on Motion to Withdraw Guilty Plea ("MT") at 137, 144, 147–48. The prosecutor testified that he did not make any promises to Halleck or to Griffin concerning the sentence Griffin

would receive, and that Halleck made no such promises to Griffin while he (the prosecutor) was present. MT at 166. Halleck's account was at odds with both the prosecutor's testimony and with Griffin's. Halleck testified that "I didn't promise [Griffin] that he would get probation, but I did promise him that he wouldn't get more than three years." MT at 193. Halleck explained that he had told Griffin that the judge might place him on probation or sentence him to a period of incarceration up to three years, "[b]ut the one thing I told him was it was a three-year cap. Because if it had been a five-year cap we'd have never pled." MT at 197; see also MT at 203. Halleck gave inconsistent testimony concerning whether he told Griffin that the agreement to limit any period of incarceration to three years was binding on the court. When questioned by the court, Halleck testified that he did not tell Griffin that the agreement was binding:

> The Court: Did you explain to [Griffin] that [the plea agreement] was binding on the court?
>
> The Witness: No, sir; I didn't. I never had any idea that you'd ever do that to me or to him.
>
> The Court: Wait a minute, Mr. Halleck.
>
> The Witness: I conveyed that thought to him. I didn't tell him that it was binding on you, no. Obviously, it wasn't.

MT at 204–05. Later in his testimony, however, Halleck indicated that he had promised Griffin that the judge would sentence him to no more than three years in prison:

> The Court: The court never promised your client or you that it would give anything other than up to the maximum of five years.
>
> The Witness: You never promised me. You didn't promise anybody.
>
> The Court: That's exactly right.
>
> The Witness: But I told him—I promised him you wouldn't give him more than three years.

MT at 214A–215. At the conclusion of the hearing, the District Court indicated that it found Griffin and his witnesses "wholly

lacking in credibility" and stated that "there is no basis in fact or in law for [Griffin] to be allowed to withdraw his plea." MT at 233.

The District Court issued its formal decisions on the motions on August 26, 1986, in two memorandum opinions and orders. In the first decision, the court denied Griffin's motion to withdraw his guilty plea. The court conceded that "[i]f defendant was promised that he would not be sentenced to five years, he is entitled to relief," 641 F.Supp. at 1549, but found "as a matter of fact, that defendant was not promised by [the prosecutor], Mr. Halleck or the Court that he would receive less than the maximum sentence of five years." *Id.* at 1550. The Court also held that the government's allocution at the sentencing hearing did not breach the plea agreement, that Griffin's plea to mail fraud was knowingly and voluntarily made, and that Griffin had adequate time to review the presentence report and to address any inaccuracies in it. *Id.* at 1551–54. In the second decision, the court held Griffin in civil contempt for making misrepresentations to the court "with respect to the source of the $5,400 and the whereabouts of $30,000–plus," and for failing to turn over the $5,400 immediately after the sentencing hearing. 641 F.Supp. 1556, 1558–59 (D.D.C.1986). The court declined to impose any sanctions, however, explaining that "the $5,400 has been paid into the Court's registry. Thus the defendant is no longer in contempt, and the Court, therefore, need not impose any sanctions, at this time, to coerce the defendant to pay the $5,400." *Id.* at 1559.

## II. ANALYSIS

■ Griffin moved to withdraw his guilty plea under Federal Rule of Criminal Procedure 32(d) and 28 U.S.C. § 2255.[1] Once a defendant who pleads guilty has been sentenced, permission to withdraw the plea will be granted only "in those 'extraordinary cases' when the court determines that a manifest injustice would result from

1. Fed.R.Crim.P. 32(d) provides that after sentencing, "a plea may be set aside only on direct

allowing the plea to stand." *United States v. Roberts,* 570 F.2d 999, 1008 (D.C.Cir. 1977). A guilty plea must be set aside if it is shown to have been "induced by promises or threats which deprive it of the character of a voluntary act," *Machibroda v. United States,* 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962), or to have been made in reliance on a promise by the prosecutor that was subsequently breached. *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971).

Griffin argues that his guilty plea was not truly voluntary because it was induced by a promise that he would receive less than the maximum sentence of five years. A guilty plea is voluntary only if it is " 'entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel.'" *Mabry v. Johnson,* 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984) (quoting *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1473, 25 L.Ed.2d 747 (1970) (internal quotations omitted)).

In this case, the District Court found after an evidentiary hearing that Griffin had not been promised that he would be sentenced to less than five years' incarceration. In reaching that conclusion, the court relied to a large extent on Griffin's statements under oath during the plea proceeding, in which he affirmed that his plea was not made in response to any representations by Mr. Halleck or the prosecutor as to what the actual sentence would be, and acknowledged that the court had total discretion in sentencing and could impose the maximum penalty. Although "the representations of the defendant, his lawyer, and the prosecutor at such a [plea] hearing ... constitute a formidable barrier in any subsequent collateral proceedings," it is also clear that

the barrier of the plea or sentencing proceeding record, although imposing, is not invariably insurmountable.... [T]he

appeal or by motion under 28 U.S.C. § 2255."

**6**

federal courts cannot fairly adopt a *per se* rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment.

*Blackledge v. Allison,* 431 U.S. 63, 73–75, 97 S.Ct. 1621, 1628–29, 52 L.Ed.2d 136 (1977) (footnotes omitted); *see also United States v. Roberts,* 570 F.2d 999, 1007 (D.C. Cir.1977) (fact that appellant, when questioned by court, denied that guilty plea had been induced by prosecutorial promises does not estop him from seeking to withdraw plea).

■ The District Court in this case properly gave significant weight to the statements made by Griffin and Halleck at the plea proceeding. But it also carefully considered their testimony at the hearing on Griffin's motion to withdraw his plea. This court has stated that a guilty plea may not be set aside on the ground that "counsel 'assured' defendant that he would obtain certain treatment, even if embellished by the defendant's addition that he 'presumed' that his attorney had in hand a promise or agreement on the part of the prosecutor or judge." *United States v. Simpson,* 436 F.2d 162, 164 (D.C.Cir.1970). Rather, a defendant who seeks to withdraw his plea under the circumstances presented here must demonstrate that he was advised by his counsel that the judge was a party to the agreement supposedly reached, or at least that that agreement was binding on the judge. *See id.* ("an allegation of false advice from counsel of an outright arrangement with the judge crosses the line and would constitute, if proved, impermissible verbal coercion"). Halleck's testimony at the motions hearing was inconsistent with Griffin's testimony, and also internally inconsistent with respect to the question of whether Halleck promised his client that the court would abide by the "three-year cap." After "wrestling" with these inconsistencies, the District Court concluded that "[t]he only credible evidence of a plea agreement was the evidence of the agree-

ment as stated in open court on January 23, 1986, within minutes after the agreement was reached," and that no promises had been made to Griffin other than those set forth in the plea agreement. 641 F.Supp. at 1550. The District Court apparently concluded that Halleck's testimony that he had promised Griffin that the judge would sentence him to no more than three years was not credible. His conclusion was bolstered by the prosecutor's testimony concerning a telephone conversation he had with Halleck after Griffin was sentenced. According to the prosecutor, Halleck "indicated that if it would help his client, Mr. Griffin, he would come in and testify that he, Mr. Halleck, promised Mr. Griffin that he would get probation as a sentence" and that Halleck "went on to say that he would deny, if ever asked, that he had this conversation on this particular point." MT at 221. In sum, despite the closeness of the judgment call, the District Court's finding that Griffin had not been promised that he would receive less than the maximum sentence was not clearly erroneous. Further, even if the District Court had found Halleck's testimony to be credible, there was no evidence that Halleck told Griffin explicitly that the agreement was binding on the court, and certainly no evidence that the court was actually a party to the agreement. We conclude that Griffin was aware of "the actual value of any commitments made to him by ... his own counsel" and that his guilty plea therefore was voluntary.

■ Griffin also argues that he should be permitted to withdraw his guilty plea because the government breached the plea agreement, which provided that the prosecutor would limit his allocution to arguing that the court should order restitution to Ms. Pierotti in the amount of $62,500. The prosecutor's statements at the sentencing hearing concerning the amount of money Ms. Pierotti sent to Griffin, the sources from which she obtained those funds, and her motivation for acting as she did were related to the need for restitution and therefore fell within the scope of the plea agreement. Similarly, the prosecutor's

comments with respect to Griffin's assets were relevant to show that Griffin was financially able to make full restitution, and were responsive to Griffin's claim that he lacked the funds to make restitution. *See* ST at 25, 33, 36. The prosecutor, however, went over the line when he read to the court from an Illinois decision which described Griffin as a "cunning man" who had used his wits and charm to "tak[e] advantage of people," and then urged the court not to "be further manipulated" by Griffin. These comments constituted a general attack on Griffin's character rather than an argument in favor of restitution. Nonetheless, the District Court was clearly informed of the terms of the plea agreement and of what the government's recommendation on penalty was to be: *i.e.*, that the court order full restitution and that any period of incarceration not exceed three years.[2] This was not a situation in which a "post-sentence application informs the trial court, for the first time, of a plea agreement term that the prosecutor allegedly failed to honor." *See United States v. Bullock,* 725 F.2d 118, 119 (D.C.Cir.1984).

Further, the court stated at the sentencing hearing that it had been aware of the Illinois decision before the prosecutor's allocution and that it "did not affect the court's decision one whit." MT at 232. In these circumstances, we find no "manifest injustice" that would require us to permit Griffin to withdraw his guilty plea. We have previously had occasion, however, to "admonish the government to avoid occasions for questioning its meticulous adherence to the terms of a plea bargain," and we do so again in this case. *Bullock,* 725 F.2d at 119.[3]

 We have considered appellant's other arguments and have found them to be without merit.[4] Accordingly, the judgment of the District Court is

*Affirmed.*

---

**2.** Appellant contends that the prosecutor breached the plea agreement by stating "in a half-hearted manner" the government's recommendation that any penalty imposed not exceed three years. *See* Brief of Appellant at 7. This argument is foreclosed by the Supreme Court's decision in *United States v. Benchimol,* in which the Court held that the government's agreement to recommend a particular sentence does not carry with it an implied requirement that the prosecutor make the recommendation "enthusiastically" or that he explain the reasons for the recommendation. 471 U.S. 453, 455, 105 S.Ct. 2103, 2104–05, 85 L.Ed.2d 462 (1985) (per curiam). The *Benchimol* Court distinguished *United States v. Brown,* 500 F.2d 375 (4th Cir.1974), the case principally relied on by appellant, as one in which "the Government attorney appearing personally in court at the time of the plea bargain expressed personal reservations about the agreement to which the Government had committed itself." *Benchimol,* 471 U.S. at 456, 105 S.Ct. at 2105. The prosecutor in *Brown,* when questioned by the court about the terms of the plea agreement, stated that he did "have some problems" with the government's sentencing recommendation. *Brown,* 500 F.2d at 377. The prosecutor in this case expressed no such "personal reservations."

**3.** Griffin also argues that the government violated the terms of the plea agreement "by allowing the complaining witness to address the Court." Brief of Appellant at 28. The District Court correctly concluded, however, that Ms. Pierotti was not a witness for the government and that her statements at the sentencing hearing could not be considered part of the government's allocution. 641 F.Supp. at 1553. Although the prosecutor did notify the court that Ms. Pierotti was present and wished to speak, he did not direct any questions to her. She was questioned by the court and cross-examined by Griffin's counsel.

**4.** Griffin also appeals from the District Court's decision holding him in contempt of court, arguing that he "took every step within his power to immediately tender the $5,400 partial restitution as ordered by the Court." Brief of Appellant at 41. The court stated in its opinion, however, that the $5,400 had been paid into the court's registry and that therefore "the defendant is no longer in contempt." 641 F.Supp. at 1559. Because the contempt has been purged, the issue presented by appellant is moot. *See In re Campbell,* 628 F.2d 1260, 1261 (9th Cir.1980) ("once a civil contempt order is purged, no live case or controversy remains for adjudication").