**Gardner v. SSA**                               **CV-95-525-B   06/13/96**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE


Roberta M. Gardner

    v.                                              CV-95-525-B

Shirley S. Chater, Commissioner of the
Social Security Administration


### O R D E R


Roberta Gardner requests reversal of the Commissioner's decision to deny her claim for disability insurance benefits. The Commissioner moves to affirm the decision.  Because there is substantial evidence in the record supporting the Commissioner's determination that Gardner is not disabled, I deny Gardner's request and grant the Commissioner's motion.


### I.  BACKGROUND[1]

Gardner injured her lower back at work on February 12, 1992, while trying to move a cart loaded with shoes which was stuck in a crack in the floor.  After initial treatment for back pain at the Exeter Hospital Emergency Room, she began treatment with Dr. Kenneth Spengler, an orthopedic surgeon.  Dr. Spengler

---

[1]  The following facts are either undisputed or taken from the parties' Joint Statement of Material Facts.

found "limited flexibility of the lumbar spine because of discomfort. Slight tenderness at the base of the spine, some muscle spasm present bilaterally," and diagnosed a lumbar sprain. He prescribed an "air tour" belt to support Gardner's back, physical therapy, and Soma, a muscle relaxant. He also recommended that she not return to work. Lumbosacral[2] x-rays were unremarkable.

Three months later, Dr. Spengler determined that Gardner had improved only minimally, and referred her to Dr. Levy, who diagnosed "a severe lumbosacral strain with coexistent physical deconditioning and muscle spasms that are partly perpetuated by deconditioning." He noted Gardner reported that her left leg occasionally became numb, but found no evidence of neurological disease. He also noted that Gardner's pain could be caused by internal disc disruption, but stated that the treatment for that was conservative and similar to the treatments Gardner was already receiving from Dr. Spengler.

Dr. Spengler gave Gardner a work release to light duty in July of 1992. She stayed at light duty for only three days before returning to her normal job, where she lasted only a short

---

[2] Relating to the vertebrae between the ribs and pelvis. See Stedman's Medical Dictionary, 896-97 (25th ed. 1990).

time before leaving again due to back pain. Dr. Spengler saw her several times during the fall of 1992, diagnosed "a chronic lumbar sprain that's slowly resolving," and in November referred her to ACHIEVE, an exercise program designed to physically condition participants for work.

Gardner was evaluated several times before her admission to the ACHIEVE program. Dr. Kulich diagnosed chronic low back pain and a mild anxiety disorder, which he described as "marked somatic concern, and likely use of denial and somatization in response to psychosocial stressors." A physical evaluation performed at the Exeter Hospital's Work Fitness Center on November 17, 1992, showed that Gardner could sit for 60-90 minutes, stand for a normal period of time, and walk for one hour five days per week. A second evaluation performed December 9, 1992 showed that Gardner was capable of sedentary work, that she could lift no more than ten pounds, that she had no walking or carrying capacity, that she was totally unable to climb stairs, and that she was unable to sit or stand for more than thirty minutes. The evaluation also indicated that Gardner was abnormally anxious about pain, stating that she had an "elevated somatic focus." Dr. Levy examined Gardner again on December 15,

3

1992 and diagnosed chronic myofascial[3] thoracic and lumbar pain. Dr. Levy advised that Gardner "will need some psychological support to diffuse anxiety over reinjury."

She entered the ACHIEVE program in December 1992 and completed it in February 1993. Gardner made excellent progress in physical reconditioning. She had normal flexibility by the end of the program, and rarely complained of pain or soreness. On March 8, Dr. Levy noted "I really think the patient's chronic pain is improving nicely. Her principal problem now is that of anxiety and the associated poor sleep that results."

On July 20, 1993, Gardner met with a Vocational Rehabilitation Counselor. The counselor's report notes that in addition to her back problems, Gardner had carpal tunnel syndrome, her right hand middle finger is shorter than the adjacent fingers due to a congenital defect, and she has poor finger dexterity. The counselor questioned her ability to type or use a keyboard and stated that "perhaps she cannot work in any capacity at this time."

From July, 1992 to February, 1993, physicians continued to diagnose Gardner with chronic low back pain and muscle spasm.

---

[3] "Of or relating to the fascia surrounding and separating muscle tissue." Stedman's, 1016.

4

Based on a review of Gardner's medical records, but not on a physical examination, Dr. Rainie assessed Gardner's residual functional capacity on December 30, 1993. According to him, Gardner can frequently lift ten pounds and stand, walk, or sit, with normal breaks, for a total of six hours in an eight-hour day. He also found that Gardner could occasionally climb, stoop, kneel, crouch, and crawl.

In February, 1994, Dr. Andrew Weeks noted that Gardner had continuing lower back pain and a decreased range of motion, and that her problems had been exacerbated by a recent fall. Dana Pride, a nurse practitioner, found multiple areas of spasm along Gardner's spine and that her neck had a decreased range of motion. On March 14, 1994, Dr. Gordon Thomas diagnosed a possible psychological adjustment disorder, and advised that Gardner needed a low stress job and occasional supportive counseling.

Finally, Lisa Bujno, a nurse practitioner, assessed Gardner's ability to perform work-related activities on October 1, 1994. Gardner told her that she could carry one gallon of milk "most of the time but occasionally not even this much." The nurse practitioner reported that Gardner can sit for two hours, then needs a 45 minute break, and can walk 1-2 miles over the

period of an hour and a half before inducing a spasm, then she must lie down for an hour.  The nurse practitioner also opined that Gardner "would not be able to do work involving reaching above head or below waist, work involving bending forward, or work involving large machinery or areas of vibration."  On December 22, 1994, Gardner testified that in addition to her low back pain, she occasionally experiences numbness and pain in her left leg.

On November 1, 1993, Gardner applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C.A. § 401, _et seq._ (West 1991 & Supp. 1996).  The Social Security Administration denied her claim initially and on reconsideration.  An Administrative Law Judge ("ALJ") held a hearing on the matter on December 22, 1994.  The ALJ issued a decision on February 7, 1995 denying Gardner disability insurance benefits, and on October 13, 1995, the Appeals Council denied her request for review.

## II.  STANDARD OF REVIEW

After a final determination by the Commissioner and upon request by a party, this court is authorized to review the pleadings and the record and to enter a judgment affirming,

6

modifying, or reversing the Commission's decision.  42 U.S.C.A. § 405(g) (West 1995).  The court's review is limited in scope, however, as the Commissioner's factual findings are conclusive if they are supported by substantial evidence.  Id.; Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  The Commissioner is responsible for settling credibility issues, drawing inferences from the record evidence, and resolving conflicting evidence.  Id.  Therefore, the court must "'uphold the [Commissioner's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion.'"  Id. (quoting Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981)).  However, if the Commissioner has misapplied the law or has failed to provide a fair hearing, deference to the Commissioner's decision is not appropriate, and remand for further development of the record may be necessary.  Carroll v. Secretary of Health & Human Services, 705 F.2d 638, 644 (2d Cir. 1983).

## III.  DISCUSSION

In his decision, the ALJ followed the five-step sequential evaluation outlined in 20 C.F.R. § 404.1520 and found that

7

Gardner (1) had not been engaged in substantial gainful activity since she initially injured her back,[4] (2) Gardner suffered from a severe impairment which (3) did not equal or exceed an impairment listed in Appendix 1 to Subpart P of the Social Security Regulations, but did (4) prevent her from performing her past relevant work, and that (5) Gardner retained the residual functional capacity to perform a significant number of jobs in the national economy, such as cashier or security systems monitor. Gardner challenges the ALJ's decision at steps three and five.

## A.   Step Three

At step three of the sequential analysis, the ALJ evaluates the claimant's condition under the criteria provided in the Commissioner's regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. 404.1520(D) (1994). The claimant bears the burden of proving that he has an impairment that meets or equals the criteria of a listed impairment. Dudley v. Secretary of Health and Human Services, 816 F.2d 792, 793 (1st Cir. 1987). If the claimant meets his burden, the Commissioner is required to find the claimant disabled, and need go no further in the

---

[4]   The ALJ states that Gardner injured her back on February 11, 1992, see Tr. 15, but the joint statement of facts states that she injured her back on February 12, 1992.

8

evaluation process.  Id.; see § 404.1520(D).

Gardner claims that the ALJ should have found that she met the requirements of disability listing 1.05 C, Part 404, Subpart P, Appendix 1, which states:

1.05 Disorders of the Spine

C. Other vertebrogenic disorders (e.g. herniated nucleus pulposus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months.  With both 1 and 2:

1. Pain, muscle spasm, and significant limitation of motion in the spine; and

2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

Although Gardner presented evidence of her back pain and muscle spasms, she presented no objective medical evidence that she suffers from sensory and reflex loss.  Indeed, Dr. Spengler noted that her neurologic exam was "unremarkable," Tr. 130, and Dr. Levy later stated that Gardner "lacks numbness, parasthesis, localized muscular weakness, bowel or bladder dysfunction, or any other localizing neurological symptom."  Tr. 141.  Dr. Levy also noted that he did "not find any evidence for objective neurological disease."  Tr. 142.  Gardner testified that she has occasional numbness in her hands and legs, however the regulations specifically state that a finding of disability under

9

1.05 C cannot be based on the claimant's subjective allegations. See Part 404, Subpart P, Appendix 1, 1.00. Therefore, I hold that substantial evidence supports the ALJ's conclusion that Gardner failed to carry her burden of proof at step three of the sequential evaluation.

**B.    Step Five**

Gardner argues that the ALJ erred at step five of the sequential analysis in two ways. First, Gardner argues that the ALJ wrongly discredited her subjective complaints of pain. Second, she argues that the ALJ failed to include all of her functional limitations in his hypothetical.

**1.  Subjective Complaints of Pain**

Once a claimant presents a "clinically determinable medical impairment that can reasonably be expected to produce the pain alleged," the ALJ must consider the claimant's subjective complaints of pain. Avery v. Secretary of Health and Human Services, 797 F.2d 19, 21 (1st Cir. 1986); accord 42 U.S.C.A. 423(d)(5)(A) (Supp. 1995); 20 C.F.R. 404.1529(c). In determining the weight to be given to allegations of pain, the claimant's complaints "need not be precisely corroborated with medical findings." Dupuis v. Secretary of Health and Human Services, 869 F.2d 622, 623 (1st Cir. 1989). When the claimant's reported

10

symptoms of pain are significantly greater than the objective medical findings suggest, the ALJ must consider other relevant information to evaluate the claims. Avery, 797 F.2d at 23. The ALJ must inquire about the claimant's daily activities; the location, duration, frequency, and intensity of pain and other symptoms; precipitating and aggravating factors; the character-istics and effectiveness of any medication, treatments, or other measures the claimant is taking or has taken to relieve pain; and any other factors concerning the claimant's functional limita-tions due to pain. 20 C.F.R. 404.1529(c)(3); Avery, 797 F.2d at 23.

The ALJ found that Gardner is not disabled due to pain. In his hearing decision, he states:

> [Physical capacity evaluations] reflect the ability for at least sedentary work. The claimant's testimony and report of activities of daily life do not substantially contradict this assessment. Exhibits 8 and 10 reflect a wide variety of activities, including significant daily walking, vacuuming, driving, reading and going to the movies. These belie her claim of total disability.

Tr. 14.

He also found that Gardner's subjective pain complaints were not credible.

Gardner points to many instances in the record where she informed doctors of her pain and received treatment for her pain.

11

Her reports of her daily activities, however, provide substantial evidence that she does not suffer from disabling pain. In several Disability Reports, she stated that she does the dishes, does the laundry, occasionally goes fishing, goes to dinner and sometimes to a movie with her son, walks a lot, knits and does other crafts, drives short distances, walks her dog, generally cares for herself, cooks three meals a day for herself, goes shopping with her son (who lifts the bags), reads, and watches television. Tr. 115, 116. Although she also reported that she has trouble vacuuming, and that some days she must lay in bed all day due to the pain, the long list of activities she says she is able to do regularly provides substantial evidence that she is not totally disabled due to her pain. This evidence provides ample support for the ALJ's conclusion that Gardner's subjective pain complaints were not credible.

## 2. Accuracy of the ALJ's Hypothetical Question

Gardner also argues that the ALJ erred at step five of the sequential analysis by failing to include all of her functional limitations in the hypothetical question he asked the VE.[5] At

_____

[5] Gardner also argues that the ALJ erred by finding that she could perform sedentary jobs. The ALJ did not find that Gardner could perform all sedentary jobs. He found that her ability to perform sedentary work was limited in several ways, and she retained the ability to perform some sedentary jobs, such

12

step five of the sequential analysis, the Commissioner bears the burden of proving that there are jobs available in the national economy that the claimant could perform.  Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 7 (1st Cir. 1982).

The ALJ asked the VE the following hypothetical:

> I'd like you to assume we have a person of the same age, education, and past relevant work as the claimant. And assume that individual has the ability to lift and carry, push and pull 20 pounds occasionally, ten pounds frequently, but is restricted by the following.  The individual has the inability to do repetitive above shoulder reaching, repetitive bending and stooping, repetitive pushing and pulling, prolonged standing, walking and sitting.  But that individual has the option to sit and stand at will. Individual would be allowed to walk in the area that we -- work area that we're considering if there is any work area.  The individual would have to avoid work environments either would be a need to climb ladders, scaffolds.  And that is the individual wouldn't be able to work at heights. The individual would have a moderate decrease in the ability to complete detailed and complex work  . . . And would not be able to cope with the high stress work setting.

Tr. 56.

Gardner argues that the ALJ's hypothetical is inaccurate in three ways.  First, Gardner argues that the medical evidence does not support the ALJ's conclusion that she can lift, carry, push

_____

as cashier or surveillance systems monitor.  She also argues that the ALJ erred because the hypothetical he gave to the VE and the hypothetical he describes in his decision do not match exactly. She fails, however, to point to any substantive differences.

and pull 20 pounds occasionally, and 10 pounds frequently. Although the ALJ assumed that Gardner had this capacity when he posed his hypothetical question, the following exchange demonstrates that the VE limited his answer to the question by further assuming that Gardner was capable of performing only sedentary jobs:

> ALJ: Would there be any other work that [an individual with the limitations listed in the hypothetical] could do?
>
> VE: I believe that a possibility would be a sedentary cashier job with a sit/stand option, such as in a small store or in a parking lot or in a movie theater. That's one possibility. Another would be --
>
> ALJ: What would that exertional level be?
>
> VE: Well, I have -- there are some sedentary jobs and some light jobs, but **I would limit her to the sedentary Your Honor.**
>
> ALJ: **All right.**

Tr. 56 (Emphasis added).

Since the VE limited his answer to sedentary jobs that Gardner was capable of performing and such jobs require only the exertion of "10 pounds of force occasionally . . . and/or a negligible amount of force frequently," Dictionary of Occupational Titles, 1013 (4th ed. 1991), the pertinent question is whether the record contains substantial evidence to support a finding that Gardner's RFC permitted her to exert 10 pounds of

14

force occasionally or a negligible amount of force frequently.

Several months after Gardner's initial injury, Dr. Spengler, after several examinations, recommended that she return to "light duty" work. Tr. 132. Dr. Levy also recommended "light duty" work. Tr. 142. Peter Attenborough, a kinesiotherapist, examined her upon Dr. Spengler's referral to determine whether she might benefit from ACHIEVE, a work hardening physical therapy program. After an extensive evaluation, Attenborough estimated the following residual capacities:

|  | Occasionally | Frequently |
|---|---|---|
| Lifting floor to knuckle | 19 lbs. | 5 lbs. |
| Lifting knuckle to shoulder | 9 lbs. | 5 lbs. |
| Lifting shoulder to overhead | 7 lbs.[6] | 4 lbs. |
| Pushing | 24 lbs. | 14 lbs. |
| Pulling | 13 lbs. | 11 lbs. |

Tr. 162.

Thus, in every category except knuckle to shoulder lifting, in which she was only one pound below the requirement, Gardner was within the parameters of sedentary work before she went through the ACHIEVE program. Attenborough also thought Gardner capable of at least sedentary work, although he did not define "sedentary." Furthermore, a "Functional Restoration Physical

_____

[6] The ALJ accounted for this weakness in his hypothetical question by limiting the hypothetical claimant to jobs which do not require repetitive above-shoulder reaching.

15

Reconditioning Discharge Note" from the ACHIEVE program indicates that Gardner became significantly stronger due to the program. Finally, upon reviewing the medical evidence, Dr. Robert Rainie estimated that Gardner could lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently, an exertional capacity at least twice that required for sedentary work.[7] Therefore, I find that there is substantial evidence from which the ALJ could conclude that Gardner had the exertional capacity, subject to the other limitations included in the hypothetical, to perform sedentary work.

Second, Gardner argues that the ALJ's hypothetical is inaccurate because it fails to account for her inability to sit or to stand continuously for more than half an hour. The ALJ stated, however, that the hypothetical claimant had to be able to sit or to stand at will. Furthermore, the VE clearly included the need to be able to alternate between sitting and standing at will in the assumptions he considered. Gardner does not argue that the ALJ failed to included cumulative limits on the total time she can sit, stand, or walk during a work day. Therefore,

_____

[7] While the estimations of a non-examining physician cannot alone provide substantial evidence, they may do so if supported by other medical evidence. See <u>Berrios Lopez v. Secretary of Health and Human Services</u>, 951 F.2d 427, 431-32 (1st Cir. 1991).

Gardner's argument is meritless.

Third, Gardner argues that the ALJ should have included her pain as a functional limitation in his hypothetical. As the ALJ explains in his decision, he <u>did</u> account for Gardner's pain in his hypothetical by limiting the hypothetical claimant to sedentary jobs with a sit/stand option which would not require repetitive above-shoulder reaching, bending, stooping, pushing, or pulling. That the ALJ did not use the word "pain" in his description of the hypothetical claimant is immaterial; he listed the functional limitations which he thought Gardner's pain would cause. Furthermore, Gardner does not argue that her pain limits her in any way not listed in the hypothetical. Therefore, I hold that the ALJ had substantial evidence for his assessment of Gardner's residual functional capacity and accurately transmitted Gardner's functional limitations to the VE.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Gardner's motion to reverse the decision of the Commissioner (document no. 5) is denied, and the Commissioner's motion to affirm (document no. 6) is granted.

17

SO ORDERED.


                                         _____
                                         Paul Barbadoro
                                         United States District Judge


June 13, 1996

cc:  Vicki S. Roundy, Esq.
     David L. Broderick, Esq.