# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 17, 2011    Decided December 9, 2011

No. 10-5372

IN RE: CONTEMPT FINDING IN UNITED STATES V. STEVENS,

WILLIAM M. WELCH AND BRENDA K. MORRIS,
APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-mc-00273)

*Mark H. Lynch* and *Catherine E. Stetson* argued the cause for appellants. With them on the briefs were *Simone E. Ross*, *William W. Taylor III*, *Chuck Rosenberg*, and *Michele W. Sartori*.

*Steven H. Goldblatt,* appointed by the court, argued the cause as *amicus curiae* in support of the lower court's judgement. With him on the brief was *Doug Keller*, Supervisory Attorney.

Before: ROGERS and GARLAND, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* ROGERS.

Concurring opinion by *Senior Circuit Judge* EDWARDS.

ROGERS, *Circuit Judge*: The issue in this appeal is whether the district court erred in holding two Justice Department attorneys in contempt without affording them the procedural protections provided by Rule 42(a) of the Federal Rules of Criminal Procedure for criminal contempt.  We hold there was no error.  The character and nature of the contempt were civil.  Its purpose was to compel the production of documents to the defendant as the district court had ordered.  The contempt was purged upon their production, the contempt was lifted, and no sanctions were imposed because the contempt finding had prompted compliance with the district court's order.

## I.

In October 2008, after a trial that the district court characterized as "marred by repeated allegations of discovery violations and prosecutorial misconduct," *In re Contempt Finding in United States v. Stevens*, ("*Contempt Finding*"), 744 F. Supp. 2d 253, 256 (D.D.C. Oct. 12, 2010), a jury convicted a sitting United States Senator of accepting gifts without reporting their value on his campaign disclosure forms, in violation of 18 U.S.C. § 1001(a)(1) & (2).  Prior to sentencing, the Justice Department received on December 2, 2008 a self-styled "whistleblower" complaint from FBI Special Agent Chad Joy.  The complaint alleged misconduct by certain government employees involved in the investigation and prosecution, but not William M. Welch or Brenda K. Morris, the two Justice Department attorneys now before this court who are, respectively, the Chief and Principal Deputy Chief of the Public Integrity Section, Criminal Division. The Department notified the district court *ex parte* on December 11, 2008 by sealed memorandum and requested the Joy complaint be filed under seal. On December 19, after a sealed hearing attended by Welch and Morris and at which Joy's attorney asked that the complaint

be sealed based on Joy's desire for whistleblower protection, the district court ordered the Department to give an unredacted copy of the complaint to the defendant and that a redacted copy of the complaint be filed on the public docket.

A second hearing was held on January 14, 2009 regarding whether, as the Department requested, redacted names should be made public, including Joy's. Welch advised the district court that Joy did not qualify for whistleblower status. The district court, concerned that it had been mislead at the December 19 hearing, sought to determine when Joy had been denied whistleblower status. Morris stated Joy "had been given a letter as early as December 4th telling him he had been denied whistleblower status." Status Hr'g Tr. Jan. 14, 2009 at 17. When the district court inquired why it had not been informed, Welch and Morris stated neither they nor the Public Integrity Section had known. After further questioning, the district court stated that it wanted a declaration from the Attorney General stating who knew what when and told Welch and Morris that they had an obligation to inform the district court that Joy had been denied whistleblower status either before the December 19 hearing or as soon as they learned. The district court's revised order read:

> ORDERED that the government produce all communications to, from, or between anyone in [the Office of Public Integrity], and any other office within the D[epartment], including, but not limited to, the [Office of Inspector General, the Office of Professional Responsibility], the FBI, and the U.S. Attorney's office for the District of Alaska, between November 15, 2008 and the present, regarding the complaint filed by Agent Joy, to be filed under seal with the Court, with a copy provided to the defendant pursuant to the protective

order already in place in this case, by no later than January 30, 2009.

Order Jan. 21, 2009 at 18.

On January 30, 2009, the Department filed its response, *ex parte*, providing the documents to the district court for *in camera* inspection. An accompanying memorandum stated that "[r]ead literally, the January 21 Order would require the disclosure of *any* communication 'to, from, or between anyone in [the Office of Public Integrity], and any other office within [the Department]' between November 15, 2008 and January 21, 2009," related to Joy's complaint, including communications irrelevant to whether the Department had misled the court. Gov't's Submission in Response to the Court's Jan. 21, 2009 Order at 12. The Department accordingly limited its production to documents concerning who within the Department knew about Joy's whistleblower status and when they knew it, and objected to any broader disclosure. It asked for a two-week stay of the January 21 order if the district court disagreed, so the Department could seek reconsideration or appellate review. The Department provided only a redacted version of its memorandum to the defendant, stating "it has become apparent that compliance would require the production of substantial amounts of privileged and work-product protected materials." *Id*. at 13. It requested advance notice of any decision by the district court to release the documents to the defendant. The memorandum was signed by Patty Stemler, the chief of the Appellate Section, Criminal Division, Welch, and Morris.

On February 2, 2009, the defendant moved for the district court to "hold the government in contempt and require immediate compliance with the January 21 Order." Sen. Stevens's Mot. to Dismiss or for a New Trial, or in the Alternative, Mot. to Hold Gov't in Contempt for Violating

Court's Jan. 21, 2009 Order at 12. The motion argued that although the January 21 order was "unambiguous," and the district court had warned that motions for reconsideration be filed well in advance of the deadline and parties refrain from *ex parte* communications, the Department had not turned over the documents nor sought reconsideration of the district court's order, but instead "simply *violated* the Order and filed a last-minute 'conditional' request for a stay that could not have been acted upon before the compliance deadline." *Id*. at 7 (emphasis in original). Arguing further that "[t]he government has flagrantly disobeyed the Court's order," the motion urged that "only a contempt sanction can ensure compliance." *Id*. at 11. The motion cited authority for using civil contempt to ensure compliance with a court order for document production, *see id.* at 11–12 (citing *Fannie Mae Securities Litigation*, 552 F.3d 814, 823–24 (D.C. Cir. 2009)), and argued that to the extent the Department claims the documents are privileged "those documents should be ordered produced to the defense as a remedy for the government's contempt," *id*. at 12.

On February 3, 2009, the district court ordered the Department to respond to the motion by February 9 and to "include a detailed privilege log for each communication it seeks to withhold," with points and authorities. Order Feb. 3, 2009 at 3. It also called for a declaration from "an official with oversight responsibility for the Civil Division . . . and any and all relevant communications between attorneys in the Civil Division and attorneys within the Public Integrity Section or the Appellate Section of the Criminal Division." *Id.* at 5. The Department timely filed its response, "waiv[ing] any assertion of work-product protection that might otherwise apply to those documents in the privilege log for which no specific basis for protection is provided." Gov't's Consolidated Resp. to the Court's Feb. 3, 2009 Order and to Def's Mot. to Dismiss or for a New Trial, or in the Alternative, Mot. to hold the Gov't in

Contempt at 3 n.1. The Department also insisted that "nothing in the record of this case suggests that the Court must sanction the Government to ensure its compliance with court orders." *Id*. at 14–15.

At a status hearing on February 13, 2009, Kevin Driscoll, for the Department, advised the district court that the Department was not asserting work-product privilege for "approximately 33 documents" and would turn them over to the defendant "forthwith." Status Hr'g Tr. Feb. 13, 2009 at 10, 11. He explained the Department had yet to turn them over to the defendant because it was waiting to see if the district court agreed with its interpretation of the January 21 order, but he conceded there was "no reason" these documents had not been produced to the defendant. *Id*. at 11. The district court thereupon found Welch, Morris, Stemler and Driscoll in contempt, stating that the court had ordered the documents to be turned over to the defendant or to invoke a privilege and that the Department advises "there's no reason why they weren't turned over." *Id*. Observing it would "deal with whatever sanctions are appropriate at the conclusion of this case," *id*., the district court ordered that "those documents [be] turned over today before the close of business . . . [by] five o'clock," *id*. at 11–12. The Department turned over the documents to the defendant later that day.

By minute order of February 14, 2009, the district court, "[u]pon reflection," *sua sponte* withdrew its finding of contempt with respect to Driscoll. Minute Order Feb. 14, 2009. Stating it had held four Department attorneys in contempt "for failure to comply with this Court's January 21, 2009 and February 3, 2009 Orders, after the attorneys acknowledged that they had no reason for failing to comply with the Orders, they simply had not complied," the district court noted that "Driscoll did not sign the relevant pleadings, has not filed an appearance in this case, and

appears to have been brought in by his supervisors only recently for the limited purpose of addressing a discrete issue." *Id*. By contrast, "the three senior [Department] attorneys present at the hearing did sign the relevant pleadings and have been working on the specific issues related to the Court's January 21, 2009 and February 3, 2009 Orders for months." *Id*. Thus, "under the circumstances, it was those attorneys', and not Mr. Driscoll's, responsibility to ensure that the government complied with the Court's Orders." *Id*.

On June 2, 2009, Stemler filed a motion to vacate the contempt finding on the ground that she was wrongly held in criminal contempt because she did not have the requisite intent to act wrongfully and was not afforded the procedural protections required by Criminal Rule 42(a). Stemler's motion was placed on the miscellaneous docket as *In re: Contempt Finding in United States v. Stevens*, Civil Miscellaneous, No. 1:09-mc-273. Stemler, Welch, and Morris were listed as petitioners; a copy of the February 14, 2009 minute order in the criminal case was the first docket entry.

On October 12, 2010, the district court denied Stemler's motion to vacate the contempt finding, but lifted the contempt finding *nunc pro tunc* as to Stemler, Welch, and Morris because they had purged themselves of contempt on February 13, 2009, and dismissed the case. *See* Order Oct. 12, 2010; *Contempt Finding*, 744 F. Supp. 2d at 264. The district court stated that Stemler, Welch, and Morris had been held in civil contempt because the contempt was coercive in nature and they had purged themselves of the contempt when they turned over the documents to the defendant. *Contempt Finding*, 744 F. Supp. 2d at 256, 264. Concluding that the Department's "belated production of all documents required by the Court's January 21, 2009 Order mooted any need for coercion," the district court "therefore finds that the contempt has been purged, and finds it

appropriate to lift the contempt finding of February 13, 2009 as of the date and time at which the government complied with the January 21, 2009 Order." *Id*. at 264 (internal quotation marks and citations omitted). "Accordingly, Ms. Stemler, Mr. Welch, and Ms. Morris are no longer in contempt for their violation of the Court's January 21, 2009 Order." *Id*.

Welch and Morris appeal, contending that the district court's contempt finding was criminal, procedurally improper, and should be vacated. Our review is *de novo*.[1] *See Salazar ex. rel. Salazar v. Dist. of Columbia*, 602 F.3d 431, 436–37 (D.C. Cir. 2010); *United States v. Gatling*, 96 F.3d 1511, 1521 (D.C. Cir. 1996).

## II.

The framework for determining whether a contempt is civil or criminal is described in a series of Supreme Court cases, notably in *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418 (1911). There, the Supreme Court acknowledged that "[c]ontempts are neither wholly civil or altogether criminal," and observed that "it may not always be easy to classify a particular act as belong to either one of these two classes." *Id*. at 441. The Court instructed, "[i]t is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Id*. Drawing on *Gompers* in *Hicks on Behalf of Feiock v. Feiock*, 485 U.S.

[1] This court appointed amicus to present arguments in support of the February 13, 2009 finding of contempt, Order No. 1300685 (D.C. Cir. Mar. 30, 2011), and expresses appreciation for his assistance.

624 (1988), the Court stated that "conclusions about the purposes for which relief is imposed are properly drawn from an examination of the character of the relief itself," not from "the subjective intent of a State's laws and its courts." *Id.* at 635–36. In *International Union, United Mine Workers v. Bagwell*, 512 U.S. 821 (1994), the Court summarized the distinction, stating that civil contempt is ordinarily used to compel compliance with a court order, although in some circumstances a civil contempt sanction may be designed to "compensate[] the complainant for losses sustained." *Id.* at 829. By contrast, criminal contempt is used to punish, that is, to vindicate the authority of the court following a transgression rather than to compel future compliance or to aid the complainant. *Id.* at 828.

"Under that analysis, this case is straightforward and the district court correctly characterized the contempt as civil." Amicus Br. 25. The February 13, 2009 order had as its purpose to compel the Department's production of documents to the defendant in accordance with the January 21, 2009 order. This is a classic use for civil contempt. "Contempts such as failure to comply with document discovery" are "appropriate for imposition through civil proceedings" because they "impede the court's ability to adjudicate the proceedings before it and thus touch upon the core justification for the contempt power." *Bagwell*, 512 U.S. at 833. The defendant's motion for contempt focused on ensuring the documents were turned over as the district court had ordered on January 21, 2009. This coercive purpose was confirmed in the February 13 contempt finding and the February 14 minute order. The absence of sanctions did not — as in *Cobell v. Norton*, 334 F.3d 1128, 1145 (D.C. Cir. 2003), on which Welch and Morris rely — obscure the nature of the contempt. As amicus points out: The district court confirmed in its memorandum opinion of October 12, 2010 that Welch and Morris had purged themselves of contempt when they turned over the documents. It lifted the contempt and

imposed no sanctions because the contempt finding had prompted them to comply with the district court's prior order. Because they were not sanctioned, and because the contempt was purged, Welch and Morris were held in civil contempt. *See Salazar*, 602 F.3d at 438.

Welch and Morris contend the district court's February 13, 2009 contempt ruling was a finding of criminal contempt for three reasons: (1) The district court stated it intended to impose sanctions at a later date; (2) the alleged contempt was not immediately purged by the Department's compliance with the district court's January 21, 2009 order; and (3) the district court punished them by reprimanding them in open court for what it characterized as "outrageous" behavior by the Department.[2]

As regards their first point, Welch and Morris maintain that at no point did the district court suggest that compliance by the Department would be adequate to purge the contempt and its "stated intention to impose sanctions at a later date should be dispositive of the criminal nature of the contempt." Appellants' Br. 21. In fact, the district court told them at the February 13,

---

[2] Welch and Morris state in a footnote of their opening brief that the district court abused its discretion in finding them to be in civil contempt because their failure to comply with the district court's order was an "oversight." Appellants' Br. 26 n.11. This argument would be waived because it appears only in a footnote, without citation to authority or to the record. *Doe v. Exxon Mobil Corp.*, 654 F.3d 11, 50 n.37 (D.C. Cir. 2011); *see also NLRB v. Blevins Popcorn Co.*, 659 F.2d 1173, 1184 n.67 (D.C. Cir. 1981) (holding that "[s]ince the purpose [of civil contempt] is remedial it matters not with what intent the [contemnor] did the prohibited act") (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)). On reply, however, they clarify that they "are not arguing that they were improperly held in civil, as opposed to criminal, contempt." Reply Br. 12 n.3

2009 hearing precisely what they needed to do: turn over the 30 or so documents before 5 p.m. that day.  Whether or not they were explicitly told the contempt would be thereby purged, it was in fact purged once they complied with the district court's order, a classic identifier of civil contempt.  *See Bagwell*, 512 U.S. at 828.

Second, they note that the district court left the contempt standing after the Department complied with the January 21, 2009 order, after lifting the finding as to Driscoll on February 14, 2009.  Reliance on the timing of the district court's decision to lift the contempt is misplaced.  Welch and Morris, who are experienced attorneys at the Department, could have asked the district court for clarification of the nature of the contempt at the February 13 hearing or afterwards, yet they never did.  The fact that the district court did not act *sua sponte* the following day as to Welch and Morris as it did for Driscoll, either to reverse itself or lift their contempt, is of no moment.  The district court identified a relevant distinction between their status and Driscoll's.  And the district court decided to postpone consideration of sanctions because, as they knew, it was in the midst of the criminal trial where, prior to sentencing, a complaint had been filed alleging misconduct by the Department.  When the district court did address sanctions, it concluded there was no need for them in view of the Department's "belated production" of the required documents, and lifted the contempt as of the time of production.  *Contempt Finding*, 744 F. Supp. 2d at 264.  Moreover, they misread the February 14, 2009 minute order as confirming their contempt, Reply Br. 7, when, in fact, the district court was recounting what it had done the day before.  In relying on Driscoll's statement on February 13, 2009 that the Department would "forthwith" produce the documents, Reply Br. 9, they ignore the distinction between a promise to take action and action that should already have been completed.

Third, Welch and Morris maintain that the district court's reprimand constituted criminal contempt. Relying on *Cobell v. Norton*, 334 F.3d 1128 (D.C. Cir. 2003), they suggest a reprimand, particularly where the contemnor is a public official acting in his or her official capacity, is a criminal contempt. They focus on the following italicized words used by the district court in finding the prosecution team in contempt:

> I'll deal with the sanctions associated with the [contempt] at a later date, but that's *outrageous* for the Department of Justice, the largest law firm on this planet, to come before a federal judge and say, yeah, Judge, you know, we recognized your order, we realized it, and we just haven't gotten around to complying with it, and we really don't have a good faith reason or any reason for not having complied with it. *That is not acceptable in this court and that's the reason why I'm adjudicating those attorneys in contempt.*

Status Hr'g Tr. Feb. 13, 2009 at 13 (emphasis added). They assert that these words are "the hallmarks of a punitive contempt order," Appellants' Br. 25, illustrated by the district court's characterization of the failure to comply with the January 21, 2009 order as "outrageous" and "not acceptable." In finding them in contempt, they conclude, the district court sought to "[v]indicat[e] a perceived affront to its authority," Appellants' Br. 25, which they maintain is the purpose of criminal contempt and not an interest addressed by civil contempt.

All three grounds that Welch and Morris present for the conclusion they were held in criminal contempt focus primarily on what the district court said or did despite the Supreme Court's instruction that conclusions about the type of contempt

are to be drawn from an examination of the relief itself. *See, e.g., Bagwell*, 512 U.S. at 828; *Hicks*, 485 U.S. at 635–36. They resist the idea that the district court might *sua sponte* impose an unconditional compensatory sanction, which is compatible with civil contempt, *see Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 443 (1986); *see generally* 4 Dep't of Justice Crim. Resource Manual, *Tests for Distinguishing Between Civil and Criminal Contempt*, 9 § 757 (2011), or determine, as occurred, no further sanction was required. Further, they cite no case in which remarks like those on which they rely were held to transform civil contempt into criminal contempt, and their reliance on *Cobell* is misplaced.

In *Cobell*, the district court stated in a published opinion that the Interior Department was "an embarrassment to the federal government," noted that it was "saddened and disgusted by the Department's intransigence," and stated that the Secretary and Assistant Secretary could "now rightfully take their place . . . in the pantheon of unfit trustee-delegates." 334 F.3d at 1136 (citing *Cobell v. Norton*, 226 F. Supp.2d 1, 125, 113, 161 (D.D.C. 2002) ("*Cobell Contempt Opinion*")). The district court's 152 page opinion followed a 29-day bench trial on the contempt charges in a class action that had resulted in multiple appeals and the district court had criticized the responses of several Administrations to its orders. *See, e.g., id.* at 1134. On appeal this court concluded the contempt was criminal in view of the district court's "exceedingly strong words" in finding the defendants in contempt, suggesting it intended the finding as a reprimand, *id.* at 1146, and the lack of "any suggestion that the defendants could yet comply [with its orders] and thereby purge themselves of the contempt," *id.* at 1147. This court observed that the district court had accused the Secretary and Assistant Secretary of "committ[ing] a fraud on the Court." *See id.* at 1145 (quoting *Cobell Contempt Opinion*, 226 F. Supp.2d at 161). Here, by contrast, the district court's extemporaneous

remarks upon finding Department attorneys in contempt were significantly less harsh than the district court's statements in the *Cobell Contempt Opinion*. For better or for worse, commenting that a party's conduct is "unacceptable" or even "outrageous" is neither unprecedented nor exceptional in the course of trial litigation. *See* Amicus Br. 37 n.3 (citing cases from the Second, Fifth, and D.C. Circuits). By using such language the district courts ensure the "incidental effect" of a finding of civil contempt will be "a vindication of the court's authority" to issue the original order. *Gompers*, 221 U.S. at 443. This incidental effect does not change the nature of the contempt. *See id.*

Accordingly, because the purpose and character of the contempt found on February 13, 2009 were civil in nature, the district court did not err by failing to provide Welch and Morris with the procedural protections afforded by Federal Rule of Criminal Procedure 42(a), we affirm the February 13, 2009 and October 12, 2010 orders. *See Contempt Finding,* 744 F. Supp.2d at 264.

EDWARDS, *Senior Circuit Judge*, concurring: I am pleased to join the opinion for the court. I write separately to respond briefly to Appellants' claim that they have been stigmatized. I fully understand the personal and professional concerns raised by Appellants, but I am unpersuaded by their legal argument.

Appellants contend that "[t]he District Court 'adjudicat[ed]' [them] in contempt because it believed that their purported failure to comply with the January 21, 2009 order was 'outrageous' and 'not acceptable.'" Opening Br. of Appellants at 25. According to Appellants, the comments of the District Court "are the hallmarks of a punitive [criminal] contempt order." *Id.* As the opinion for the court makes clear, this claim is without merit.

Given the fallacy of Appellants' principal claim, the disposition of this case does not seem difficult. On the record before us, there can be little doubt that Appellants were cited for civil, not criminal, contempt. It is also noteworthy that Appellants "are not arguing that they were improperly held in civil, as opposed to criminal, contempt." Reply Br. at 12 n.3. Therefore, "[b]ecause the contempt has been purged, the issue presented by appellant[s] is moot." *United States v. Griffin*, 816 F.2d 1, 7 n.4 (D.C. Cir. 1987) (citation omitted). One wonders, then, why Appellants have pursued this appeal.

During oral argument, Appellants' counsel essentially claimed that Appellants were seriously stigmatized by the strong words used by the District Court and that this stigma has impaired their good standing in the legal profession. Counsel went so far as to suggest that, going forward, Appellants will be required to list themselves as *criminal contemnors* on state bar reports, personnel records, and job applications. As I understand their argument, Appellants seem to believe that, because the stigmatizing effects of their contempt citations are so great, "the contempt finding here was unmistakably punitive – and therefore criminal – in nature." Opening Br. of Appellants at 26. They want their day in court, in an adjudication over what they believe are citations for *criminal* contempt, to clear their names.

I understand Appellants' apparent desire for public vindication, for I certainly know that no responsible member of the legal profession relishes being accused of "outrageous" and "[un]acceptable" conduct in judicial proceedings. Indeed, no good attorney looks to be publicly accused of failing in her or his professional responsibilities, whether or not the accusation arises in the context of a contempt citation. The problem here is that Appellants' argument is a classic *non sequitur.* There is no viable connection between the *premise* of Appellants' argument – *i.e.*, they were seriously stigmatized by a strong judicial admonition – and their *conclusion – i.e.*, they were held in criminal contempt.

First, to clarify this on the record, it simply cannot be so that, following the issuance of our judgment in this case, Appellants will be required to list themselves as *criminal contemnors* on state bar reports, personnel records, job applications, or any other such papers. Such a disclosure would be a fabrication. Our decision in this case confirms, once and for all, that Appellants' conduct in this case did not result in a finding of criminal contempt. Therefore, Appellants can never face the opprobrium that might have come had they been held in criminal contempt.

Second, Appellants' concerns over the possible stigmatizing effects of the civil contempt citations are undoubtedly serious and sincere. But these concerns surely cannot, without more, support their position. The record in this case shows, without much doubt, that the District Court clearly did not intend to "punish" the Appellants for "failing to comply" with the court's orders. *Cobell v. Norton*, 334 F.3d 1128, 1147 (D.C. Cir. 2003) (citation and internal quotation marks omitted). Nor was the District Court principally concerned with vindicating its own authority, *see Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 828 (1994), when it held Appellants in contempt on February 13, 2009; rather, the court was seeking to compel the

production of documents pursuant to its January 21, 2009 order. Everything that the District Court did following the issuance of its February 13, 2009 order confirmed this. Save for the civil contempt citations, which obviously served to coerce the production of the disputed documents, Appellants were never sanctioned for the delayed production of documents.

Finally, as the opinion for the court notes, it is no answer for Appellants to complain that the District Court left the contempt citations standing for an unduly long period of time after the Department of Justice complied with the court's January 21, 2009 order. Appellants could have acted to resolve the situation by simply filing a motion with the District Court seeking clarification on sanctions. Indeed, it seems ironic that Appellants never sought clarification even as they seemingly felt that the unresolved civil contempt citations further stigmatized their professional reputations beyond the initial effects of the strong words used by the District Court when the citations were issued. Appellants may have had what they felt were good reasons for avoiding further interactions with the District Court during the pendency of the criminal trial. But the District Court cannot be blamed for Appellants' failure to seek clarification, if this was a matter of serious concern to them. I do not take Appellants' concerns lightly, but I find no support for their claim that the District Court's delay in lifting the contempt finding made them *criminal* contemnors in the eyes of the law.